## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT F. KENNEDY, JR.,

     Plaintiff,

        v.

JOCELYN BENSON, in her official capacity as Michigan Secretary of State

     Defendant.

Case No.

Hon.

**EXPEDITED RELIEF**
**REQUESTED**

Brandon L. Debus (P81159)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Ste 300
Troy, MI 48084
(248) 433-7200
BDebus@dickinson-wright.com

*Attorneys for Plaintiff*

                                            /

## VERIFIED COMPLAINT
## FOR EXPEDITED
## INJUNCTIVE RELIEF

NOW COMES Plaintiff Robert F. Kennedy, Jr., by and through his undersigned counsel, and states as follows in support of his Verified Complaint against Michigan Secretary of State Jocelyn Benson (the "Secretary" or "Defendant"):

## INTRODUCTION

1.     The Supreme Court of Michigan has held that the people's right to vote for the candidate of their choice for President of the United States should not be compromised by keeping candidates on the ballot who withdrew, even if the withdrawal was filed after the statutory deadline for withdrawing. *Mich. Republican State Cent. Comm v. Sec'y of State*, 408 Mich. 931, 931 (1980). This is because an election could be drastically changed, and people's votes diminished and rendered invalid, if the Michigan Bureau of Elections keeps a name on a ballot despite a request to withdraw. Including a name for a withdrawn candidate on the ballot also degrades an elector's right to accurately vote. Election integrity should be the forefront objective of election bureaus and that critically includes providing accurate ballots.

2.     Plaintiff Robert F. Kennedy, Jr. resides in Katonah, New York, and was a 2024 candidate for the office of President of the United States. Plaintiff announced a suspension of his campaign for the presidential race in August 2024 and requested that his name be removed from Michigan's general election ballot pursuant to his withdrawal of candidacy in Michigan. He has a special and substantial interest in assuring that the 2024 general election ballot received by the voters in Michigan accurately reflect the names of the candidates requesting to be considered for the office of President of the United States in the November general election.

3.     Defendant Jocelyn Benson is Michigan's Secretary of State and is being sued in her official capacity. Secretary Benson is an elected official tasked with conducting elections and registrations in accordance with MCL 168.31.

4.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States of America. This Court also has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this action arose in this district.

## LEGAL AND FACTUAL BACKGROUND

6.     On August 23, 2024, Mr. Kennedy suspended his campaign for the office of the President of the United States. *See* https://www.kennedy24.com/kennedy_announces_suspension_of_campaign.

7.     That same day, Mr. Kennedy sent the Secretary a withdrawal notice and formal request to withdraw from the 2024 general election in Michigan (the "Withdrawal Notice"). A true and correct copy of the Withdrawal Notice is attached as **Exhibit A**.

8.     On August 26, 2024, the Michigan Bureau of Elections responded stating that they were unable to accept Plaintiff's filing of withdrawal, citing Michigan Election Law (MCL) 168.686a(2), titled "Nomination by caucus or

3

convention where no candidate polls 5% of vote cast for candidates for secretary of state." A true and correct copy of the Bureau's response is attached as **Exhibit B**. The MCL section cited by Defendant, MCL § 168.686a(2), does not apply to presidential candidates; it only applies to candidates running for "congress, state senator, and state representative." See MCL § 168.686a(2); id. Defendant made no effort to rely on that subsection since that date.

9.    On August 27, 2024, Mr. Kennedy renewed his request to withdraw, including pointing out that "there must be a compelling reason by the State of Michigan to enforce the time limitations provided by statute if that limitation would compromise the process of nominating candidates or the right of the people to vote for candidates for President of the United States." Exhibit B.

10.    On August 29, 2024, Defendant responded and again rejected Mr. Kennedy's withdrawal, this time citing MCL § 168.686a(4), writing as follows:

Section 168.686a says the following:

> The state convention shall be held at the time and place indicated in the call. . . .Not more than 1 business day after the conclusion of the convention, the names and mailing addresses of the candidates nominated for state or district offices shall be certified by the chairperson and secretary of the state convention to the secretary of state. The certification shall be accompanied by an affidavit of identity for each candidate named in the certificate as provided in section 558 and a separate written certificate of acceptance of nomination signed by each candidate named on the certificate. The form of the certificate of acceptance shall be prescribed by the secretary of state.

4

> The names of candidates so certified with accompanying affidavit of identity and certificate of acceptance shall be printed on the ballot for the forthcoming election. **Candidates so nominated and certified shall not be permitted to withdraw.**

MCL 168.686a(4) (emphasis added). Based on this language, Mr. Kennedy's request to withdraw from the November ballot was rejected. For the same reasons, the renewed request is rejected, and Mr. Kennedy will not be permitted to withdrawn from the November 2024 General Election ballot.

**Exhibit B** at 1.

11.    The next day, on August 30, 2024, Mr. Kennedy filed a complaint in the Michigan Court of Claims seeking immediate relief. The Court of Claims, relying on MCL 168.686a(4), denied the requested relief and dismissed the action on September 3, 2024. A true and accurate copy of the Court of Claims Decision is attached hereto as **Exhibit C**.

12.    The next day, September 4, 2024, Mr. Kennedy filed an appeal to the Michigan Court of Appeals. On September 6, 2024, around noon, the Court of Appeals issued its decision reversing the Court of Claims' decision because MCL 168.686a(4) plainly does not apply to presidential candidates and remanded for "entry of an order granting immediate mandamus relief (*i.e.*, that the Secretary not include Mr. Kennedy's name on the ballot). A true and accurate copy of the Court of Appeals Decision is attached hereto as **Exhibit D**.

13.    At 3:42 p.m., a few hours after the Court of Appeals decision was entered, on September 6, 2024, Defendant "sent the call of the election and certification of candidates to the 83 county clerks without Kennedy's name listed as the Natural Law Party's candidate for President." Thus, the Secretary did **not** order that ballot printing be held.

14.    The Secretary then appealed to the Michigan Supreme Court later that day and on September 9, 2024, in a split decision, the majority in a one page decision simply held mandamus was not appropriate because Mr. Kennedy did not point to a specific law that demonstrated a clear right to require the Defendant to perform the specific act of removing him from the ballot, which the 15 page dissent strenuously disagreed. A true and accurate copy of the Michigan Supreme Court's decision is attached hereto as **Exhibit E**.

## COUNT I
### ARTICLE II, SECTION 1 AND *ANDERSON*
### UNITED STATES CONSTITUTION

15.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully stated herein.

16.    Article II, Section I of the United States Constitution, as amended by the Twelfth Amendment, envisions an orderly election for the President of the United States by which citizens in this country can vote for candidates running for that office. The votes cast by these citizens would then determine for whom the electors

of that state shall cast their ballots. What this process does _not_ envision, however, is a state presenting a slate of candidates to its citizens that includes among the listed candidates someone that has withdrawn from the race long before candidates for the ballot were certified and the ballots were printed. But that is precisely what Defendant is seeking to do.

17.     Defendant put out the call of the election and certification of candidates to the 83 county clerks in Michigan without Mr. Kennedy's name on September 6, 2024, which was her often repeated "drop dead" deadline. Yet, instead of moving forward with that certainty, Defendant sought to add Mr. Kennedy's name to the ballot for no other possible reason than to confuse unwitting Michigan voters to vote for a candidate no longer running for office. For technical reasons the Michigan Supreme Court agreed to let Defendant do same.

18.     The Supreme Court has made plain that this type of conduct should not be countenanced when it comes to electing the President of the United States. It has done so by consistently commanding that states may not impose their stringent ballot access requirements on the national election for President. As explained in _Anderson v. Celebrezze_:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the

various candidates in other States. Thus in **a Presidential election a State's enforcement of more stringent ballot access requirements, including filing deadlines, has an impact beyond its own borders**. Similarly, **the State has a less important interest in regulating Presidential elections than statewide or local elections**, because the outcome of the former will be largely determined by voters beyond the State's boundaries. This Court, striking down a state statute unduly restricting the choices made by a major party's Presidential nominating convention, observed that such conventions serve "the pervasive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State." *Cousins* v. *Wigoda,* 419 U. S. 477, 490 (1975). The Ohio filing deadline challenged in this case does more than burden the associational rights of independent voters and candidates. It places a significant state-imposed restriction on a nationwide electoral process.

*Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983) (emphasis added)

19.    Political gamesmanship seeking to have unwitting Michigan voters waste their votes on a withdrawn presidential candidate is not permissible under *Anderson.*

20.    When a presidential candidate has withdrawn prior to the certification by the Secretary of State of the candidates to be placed on the ballots, as occurred here, it is an affront to the constitutional requirement to elect a President under Article II, Section I, as amended, from those running for that office. It also clearly runs headlong into *Anderson.*

21.    At the least, there must be a compelling reason to refuse to honor a request to withdraw that compromises the electoral process of nominating presidential candidates. *Id.* As explained by one of the Justices in *Mich Republican State Cent Comm* in which a presidential candidate sought to withdraw after a statutory deadline had passed:

> The Michigan Republican State Central Committee seeks to have [a presidential candidate who withdrew after a statutory deadline for withdrawing from the presidential primary] his name deleted from the ballot lest voters be misled into voting for him in the belief that he is still a candidate for the Republican nomination and to limit the voters' choice to persons who are active candidates for that nomination so that the result of the election will accurately reflect their choice among the active candidates.
>
> There must be compelling reason to enforce time limitations provided by a statute which compromise the process of nominating candidates for the office of President and the right of the people to vote for candidates of their choice.
>
> There is no such compelling reason. There was adequate time, consistent with the holding of an orderly election, after receipt … of notification … of the withdrawal of his candidacy for the Republican nomination, to have removed his name from the ballot in accordance with his request so as to avoid misleading voters … and so that the result of the election accurately reflects voter preference among the active candidates.

408 Mich at 931.

22.    Notably, in *Mich Republican State Cent Comm*, *supra.,* the presidential candidate filed a notice to withdraw well past a statutory deadline for a primary and

only **26 days** before the election. *Id.* In contrast, Mr. Kennedy here provided notice of withdrawal **75 days** before the election.

23.     It is also just logical and fair that if a presidential candidate provides the state with adequate notice of withdrawal within a reasonable time prior to an election, let alone prior to finalizing the ballot, as occurred here, then there is no compelling reason to keep that candidate's name printed on the election ballot.

24.     Mr. Kennedy has provided adequate notice and there is no compelling reason for Defendant to make a mockery of the election of the President of the United States envisioned by Article II, Section I, as amended, of the United States Constitution. Undoing her certified notice to all 83 counties to have them now print ballots with Mr. Kennedy's name on them would serve only to mislead voters.

25.     There is no compelling reason to force this confusion. Defendant has stated that the deadline to certify candidate names for ballots is September 6. She also advised that on September 6th, she "sent the call of the election and certification of candidates to the 83 county clerks without Kennedy's name listed." According to the Defendant herself, it is now too late to do anything differently.

26.     Instead of stepping aside *after* sending certified candidate names without Mr. Kennedy's name to all 83 counties, Defendant inexplicably insists on placing Mr. Kennedy's name on the ballot. That outcome would violate the United

States Constitution and *Anderson* as it serves no purpose other than to undermine the integrity of the election for President of the United States.

27.    Placing Mr. Kennedy's name on the ballot will cause irreparable harm, reputational and otherwise, to Mr. Kennedy. Conversely, keeping Mr. Kennedy's name *off* the ballot as he requested would cause *no* harm to Defendant.

28.    Keeping Mr. Kennedy off the ballot will also cause no harm to the public. Conversely, leaving Mr. Kennedy's name will serve only to mislead voters, upend election and ballot integrity, and "inaccurately reflects voter preference among the active candidates." *Mich Republican State Cent Comm*, 408 Mich at 931. *Id.* In fact, it is in the public interest to issue injunctive relief to ensure that Michigan's elections are carried out in accordance with the Constitution.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order enjoining Secretary Benson from including Robert F. Kennedy, Jr.'s name on the 2024 general election ballot; and award any other relief that this court deems just and equitable.

## <u>COUNT II</u>
## EQUAL PROTECTION
## UNITED STATES CONSTITUTION

29.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully stated herein.

30.     The Supreme Court has consistently held: statutes cannot "unfairly or unnecessarily" burden an independent candidate's interest in the "availability of political opportunity." *See Lubin v. Panish*, 415 U.S. 709, 716 (1974).

31.     To do so violates the First Amendment. The precedents surrounding ballot-access issues embody a deep-seated fear of two-party entrenchment and what it portends for those outside the two parties—a marginalized and compromised voice. *Williams v. Rhodes*, 393 U.S. 23, 31 (1968). Consistent with that principle, the Supreme Court has held that a statute restricting ballot access is unconstitutional when it practically prohibited a minor political party with a "very small number of members" from appearing on the ballot. *Id*. at 24. It reasoned, voters have a right to "associate for the advancement of political beliefs" and to "cast their votes effectively," regardless of their "political persuasion." *Id*. at 30. Axiomatically, the First and Fourteenth Amendments, viewed together, require that whatever opportunity the major political parties have to associate or disassociate from a particular candidate be provided on equal terms to independent, third-party candidates. *See Janus v. AFSCME*, 585 U.S. 878, 891–92 (2018). In other words, what's good for the goose is good for the gander.

32.     Here, Michigan's deadline for presidential candidates to withdraw – as just adjudicated by the Michigan courts – violates this rule. They hamstring third-party candidates, while giving Democrats and Republicans a greater opportunity to

withdraw a candidate—as Biden did. Specifically, the Michigan courts, its Attorney General and its Secretary of State have now all affirmed that MCL 168.686a(4) prohibits a minor presidential candidate to withdraw once nominated. But there is no equivalent provision which prohibits a presidential candidate of a major party to withdraw. None.

33.    These statutory deadlines advantage the Democrats and Republicans in multiple ways. They give more time to withdraw. Should a candidate have a scandal (or health issues) just a few months out from the election, the major parties can potentially backtrack and try to get someone else on the ballot. A minor party candidate, however, does not have this luxury. Once nominated, there is no going back.

34.    Here, upon reflection, Kennedy has (like President Biden) decided that for associational and expressive reasons, he does not want to run for President anymore. And Kennedy (like President Biden) decided he wanted to not just be off the ballot, he also wanted to give his endorsement to someone else. Kennedy for Trump: Biden for Harris. And Kennedy (like President Biden) wanted to make sure that there was no voter confusion in Michigan—no one thinking that he was soliciting votes. Yet, Michigan's arbitrary, two-tiered deadlines prevent Kennedy (unlike President Biden) from withdrawing and making sure that his message is clear.

35.    The First Amendment safeguards fundamental rights, and unequal treatment of such rights triggers strict scrutiny. In First Amendment parlance: the major parties had an additional month to ensure that Biden was not coerced into speaking a message he didn't desire—I want votes for President—and he was not compelled to associate with a campaign he's not part of.  And put in terms of the Equal Protection Clause, if no prohibition on withdrawal is "good enough" for the Democrats and Republicans to withdraw, then it's "good enough" for Kennedy and any other minor party candidate who wants to remove himself or herself from the ballot. If nothing else, when it comes to fundamental rights, the promise of Equal Protection provides that "good enough" for the major parties applies with equal force to minor party candidates, too.

36.    Placing Mr. Kennedy's name on the ballot will cause irreparable harm, reputational and otherwise, to Mr. Kennedy. Conversely, keeping Mr. Kennedy's name _off_ the ballot as he requested would cause _no_ harm to Defendant.

37.    Keeping Mr. Kennedy off the ballot will also cause no harm to the public. Conversely, leaving Mr. Kennedy's name will serve only to mislead voters, upend election and ballot integrity, and "inaccurately reflects voter preference among the active candidates." *Mich Republican State Cent Comm*, 408 Mich at 931. *Id.* In fact, it is in the public interest to issue injunctive relief to ensure that Michigan's elections are carried out in accordance with the Constitution.

14

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order enjoining Secretary Benson from including Robert F. Kennedy, Jr.'s name on the 2024 general election ballot; and award any other relief that this court deems just and equitable.

## COUNT III
## FIRST AMENDMENT
## UNITED STATES CONSTITUTION

38.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully stated herein.

39.     Placing Mr. Kennedy's name on the ballot would constitute compelled speech in violation of the United States Constitution.

40.     The First Amendment proscribes against "abridging the freedom of speech." Here Defendant cannot survive strict scrutiny, let alone provide a legitimate, compelling interest justifying her forcing Mr. Kennedy's speech. Forcing a party to engage in speech they would not otherwise make is compelled speech in its most basic form. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc*., 547 US 47, 63, 164 L Ed 2d 156 (2006) ("Our compelled-speech cases are not limited to the situation in which an individual must personally speak the government's message. We have also in a number of instances limited the government's ability to force one speaker to host or accommodate another speaker's message.").

15

41.     Defendant is free to write and share with the world her opinion about Mr. Kennedy. That message will be viewed as coming *from Defendant*. But when she places his name on the ballot, voters believe that is because Mr. Kennedy wanted his name on the ballot, and that he is asking for their support and their vote. That message will be viewed as coming *from Mr. Kennedy*, not from Defendant. This is precisely the form of compelled speech the U.S. Constitution is intended to protect against. While Defendant is not harmed in any way by simply leaving Mr. Kennedy's name off of the ballot, compelling Mr. Kennedy to convey a false message to every citizen of Michigan that he is vying for their vote in this state, when he is not, and then subjecting him to the reputational and irreparable harm, and the loss of good will, that flows from this compelled speech violates the First Amendment.

42.     Moreover, Defendants' interpretation of the election statutes runs headlong into Mr. Kennedy's right to be free from compelled speech. In contrast, Mr. Kennedy's interpretation of the statutes does not implicate any party's constitutional rights. As such, the doctrine of constitutional avoidance renders Defendant's position untenable. *See National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 US 1, 30, 57 SCt 615, 621 (1936) ("The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be

unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.").

43.    Moreover, Mr. Kennedy has (like President Biden) decided that for associational and expressive reasons, he does not want to run for President anymore. And Kennedy (like President Biden) decided he wanted to not just be off the ballot, he also wanted to give his endorsement to someone else. Kennedy for Trump: Biden for Harris. By forcibly seeking to include Kennedy's name on the ballot, the Defendant wants to falsely represent to the people of Michigan that Kennedy is running against President Trump in Michigan and is opposed to President Trump's candidacy. Such compelled speech is anathema to the First Amendment.

44.    Nonetheless, Defendant still seeks, via an inapplicable statute, to actively direct that Mr. Kennedy's name be added onto the ballot (after certifying to not include his name on the ballots) which, in effect, would force him to hold himself out as a candidate for President in Michigan, asking for the votes and support of Michigan voters—speech he does not wish to make.

45.    There is no precedent that we could find in which a secretary of state certified the names of all candidates to be printed on the ballots, mailed this certification to all counties, and then sought through judicial decree to force a withdrawn candidates name to be added to a ballot against the candidate's desired speech. This runs headlong into precisely what compelled speech intends to prevent

– a government official seeking to force an individual, here Mr. Kennedy, to engage in speech, that he is running for president, he has emphatically rejected weeks prior.

46.     Defendant's relentless and unauthorized attempt to have Mr. Kennedy convey a message to Michigan voters he insists on not conveying not only harms Mr. Kennedy but also harms every citizen in Michigan. Defendant should not include Mr. Kennedy's name on "the ballot in accordance with his request so as to avoid misleading voters … and so that the result of the election accurately reflects voter preference among the active candidates." *Mich Republican State Cent Comm, supra,* 408 Mich at 931.

47.     Applying the foregoing to the *Anderson-Burdick* analysis, Mr. Kennedy prevails. The first step is to determine the burden the regulation at issue imposes on Mr. Kennedy which is addressed *supra*. The second step is to consider the state's justification for the restriction. Here, Defendant has provided no valid explanation for why, after sending out the call of the election and certification of candidates without Mr. Kennedy's name, she is fighting to add his name. This is plainly not about deadlines or ballot printing processes. This is about Defendant's desire to force Mr. Kennedy to convey to all Michigan voters a message that he desires their votes, when he doesn't. This shows why the third step, assessing whether "the state's restrictions are constitutionally valid given the strength of its proffered interests," also weighs in Mr. Kennedy's favor. The orderly administration of elections is best

preserved by Defendant stepping aside and allowing the ballot process to continue, without Mr. Kennedy's name, on the original timeline anticipated by the state and as she has already certified to all 83 counties.

48. Placing Mr. Kennedy's name on the ballot will cause irreparable harm, reputational and otherwise, to Mr. Kennedy. Conversely, keeping Mr. Kennedy's name _off_ the ballot as he requested would cause _no_ harm to Defendant.

49. Keeping Mr. Kennedy off the ballot will also cause no harm to the public. Conversely, leaving Mr. Kennedy's name will serve only to mislead voters, upend election and ballot integrity, and "inaccurately reflects voter preference among the active candidates." *Mich Republican State Cent Comm*, 408 Mich at 931. *Id.* In fact, it is in the public interest to issue injunctive relief to ensure that Michigan's elections are carried out in accordance with the Constitution.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order enjoining Secretary Benson from including Robert F. Kennedy, Jr.'s name on the 2024 general election ballot; and award any other relief that this court deems just and equitable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

A. Enjoin the Secretary from including Robert F. Kennedy, Jr.'s name on the 2024 general election ballot; and

B.    Award any other relief this Honorable Court deems just and equitable.


Dated: September 10, 2024                 Respectfully submitted,

                                          /s/***Brandon L. Debus***_____

                                          Brandon L. Debus (P81159)
                                          DICKINSON WRIGHT PLLC
                                          2600 W. Big Beaver Rd., Ste 300
                                          Troy, MI 48084
                                          (248) 433-7200
                                          BDebus@dickinson-wright.com

                                          *Attorneys for Plaintiff*

## **VERIFICATION**

I, Robert F. Kennedy, Jr., a citizen of the United States, have read the foregoing Complaint and know the contents are true to my knowledge on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on _Sept 10 2024_ in _Philadelphia, Penere._

_[signature]_

Robert F. Kennedy, Jr.

State of Pennsylvania
County of Philadelphia

Subscribed and sworn/affirmed before me
this 10th Day of September, 2024 by
Robert F. Kennedy, Jr.

_[signature]_

Notary Public
Lisa Joy Phillips

Commonwealth of Pennsylvania - Notary Seal
LISA JOY PHILLIPS, Notary Public
Philadelphia County
My Commission Expires October 15, 2025
Commission Number 1409348