## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT F. KENNEDY, JR.,

     Plaintiff,

       v.

JOCELYN BENSON, in her official
capacity as Michigan Secretary of
State

          Defendant.

Case No.  _____

**PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION AND
SUPPORTING MEMORANDUM**

Plaintiff, through their undersigned counsel, respectfully moves this court under Federal Rule of Civil Procedure 65 for an *ex parte* temporary restraining order and preliminary injunction barring Defendants from violating the United States Constitution. Defendants' conduct has inflicted, and continues to inflict, irreparable injury upon Plaintiffs.  This Court should issue immediate relief to protect both Plaintiff and the integrity of the upcoming 2024 general election.

1.     Mr. Kennedy filed a Verified Complaint immediately prior to the filing of this Motion based upon the numerous acts of Defendant Secretary of State Jocelyn Benson ("Secretary Benson") in contravention of the United States Constitution.

2.     Specifically, Secretary Benson seeks to improperly and illegally place Mr. Kennedy's name on the 2024 general presidential election ballot despite the fact that Mr. Kennedy has withdrawn from the 2024 presidential race and has specifically requested that his name be removed from the ballot. Secretary Benson, however, insists upon keeping Mr. Kennedy's name on the ballot for the sole purpose of confusing Michigan voters into casting meaningless votes for a defunct candidate and to compel Mr. Kennedy's speech in contravention of his constitutional rights – i.e., compelling speech, that Mr. Kennedy is actively running for President of the United States and that he has not endorsed any other candidates.

3.     Pursuant to Fed. R. Civ. P. 65, Mr. Kennedy brings this Motion requesting that the Court issue a temporary restraining order without notice to Secretary Benson. As set forth below and in Mr. Kennedy's Verified Complaint, Mr. Kennedy, and the public at large, will sustain immediate and irreparable injury, loss, and damages before a hearing on the merits can take place because, if Secretary Benson is permitted to bring ballots with Mr. Kennedy's name, the relief requested will no longer be possible.

4.     Pursuant to Fed. R. Civ. P. 65(b)(1), and prior to filing the present Motion and Verified Complaint, the undersigned provided notice to Secretary Benson's counsel via email that Mr. Kennedy would be filing this action and

seeking an immediate *Ex Parte* Temporary Restraining Order. Concurrence with this motion was not requested from Secretary Benson pursuant to E.D. Mich. LR 7.1 for the reasons set forth above.

WHEREFORE, Plaintiff Robert F. Kennedy, Jr. respectfully requests that this Honorable Court grant the present Motion and restrain Secretary Benson from placing Mr. Kennedy's name on the 2024 general election ballot.

Dated:  September 10, 2024                     Respectfully submitted,

*/s/ Brandon L. Debus*
Brandon L. Debus (P81159)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Ste 300
Troy, MI 48084
(248) 433-7200
BDebus@dickinson-wright.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT F. KENNEDY, JR.,

      Plaintiff,

            v.

JOCELYN BENSON, in her official
capacity as Michigan Secretary of
State

          Defendant.

Case No. _____

**PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.  FACTUAL AND LEGAL BACKGROUND .................................................1

II.  LEGAL STANDARDS ...........................................................................4

III.  ANALYSIS ............................................................................................5

    A.  Plaintiff Satisfies the Requirements for Obtaining a Preliminary
    Injunction............................................................................................5

        1) Plaintiff has shown a substantial likelihood of success on the
        merits. ..............................................................................................5

            a) Count I: Article II, Section 1 of the U.S. Constitution
            and *Anderson* ..........................................................................5

            b) Count II: Equal Protection Clause of the U.S.
            Constitution...........................................................................10

            c) Count III: First Amendment of the U.S. Constitution ..........12

        2)  Plaintiff will suffer irreparable injury in the absence of
        immediate  relief. .......................................................................17

        3)  The balance of equities weighs in favor of granting an
        injunction. .................................................................................17

        4)  Issuing an injunction is in the public interest. ..........................19

    B.  Plaintiff Satisfies the Requirements for Receiving a Temporary
    Restraining Order ..............................................................................20

IV.  CONCLUSION....................................................................................21

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 78 (1983) ............................................................7

*Cousins* v. *Wigoda,* 419 U. S. 477, 490 (1975)........................................................7

*Janus v. AFSCME*, 585 U.S. 878 (2018) ................................................................11

*Lubin v. Panish*, 415 U.S. 709 (1974) ...................................................................10

*National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57
S.Ct. 615 (1936)...................................................................................................14

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 164 L. Ed.
2d 156 (2006).......................................................................................................13


*Williams v. Rhodes*, 393 U.S. 23 (1968)................................................................10

**Statutes**

MCL § 168.686a(2).....................................................................................................1

MCL § 168.686a(4).....................................................................................................2

*Mich Const Art 1 § 5*...............................................................................................14

U.S. Const. amend. I ................................................................................................14

**Other Authorities**

Michigan Election Law Section 168.686a(4) ..........................................................11

**Rules**

Fed. R. Civ. P. 65(a).................................................................................................20

Fed. R. Civ. P. 65(b) ..................................................................................................5

Fed. R. Civ. P. 65(b)(1)..............................................................................................2

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Robert F. Kennedy Jr. respectfully requests that this Court issue a temporary restraining order and preliminary injunction to enjoin Defendant Secretary of State Jocelyn Benson ("Defendant" or "Secretary") from violating the United States Constitution by including Mr. Kennedy on the ballot for the 2024 general election despite his having withdrawn from the race for President of the United States.

### I.        FACTUAL AND LEGAL BACKGROUND

On August 23, 2024, Mr. Kennedy suspended his campaign for the office of the President of the United States.[1] Compl ¶ 6.  That same day, Mr. Kennedy sent Defendant a withdrawal notice and formal request to withdraw from the 2024 general election in Michigan (the "**Withdrawal Notice**"). Compl ¶ 7; Compl Ex A.

On August 26, 2024, Defendant rejected the Withdrawal Notice, stating "we cannot accept this filing. Michigan Election Law does not permit minor party candidates to withdraw. MCL § 168.686a(2)." Compl ¶ 8; Compl Ex B. However, the section cited by Defendant, MCL § 168.686a(2), does not apply to presidential candidates; it only applies to candidates running for "congress, state senator, and

---

[1] https://www.kennedy24.com/kennedy_announces_suspension_of_campaign.

state representative." *See MCL § 168.686a(2); id.* Defendant made no effort to rely on that subsection since that date.

On August 27, 2024, Mr. Kennedy renewed his request to withdraw, including pointing out that "there must be a compelling reason by the State of Michigan to enforce the time limitations provided by statute if that limitation would compromise the process of nominating candidates or the right of the people to vote for candidates for President of the United States." Compl ¶ 9.

On August 29, 2024, Defendant responded and again rejected Mr. Kennedy's withdrawal, this time citing MCL § 168.686a(4), writing as follows:

Section 168.686a says the following:

> The state convention shall be held at the time and place indicated in the call. . . .Not more than 1 business day after the conclusion of the convention, the names and mailing addresses of the candidates nominated for state or district offices shall be certified by the chairperson and secretary of the state convention to the secretary of state. The certification shall be accompanied by an affidavit of identity for each candidate named in the certificate as provided in section 558 and a separate written certificate of acceptance of nomination signed by each candidate named on the certificate. The form of the certificate of acceptance shall be prescribed by the secretary of state. The names of candidates so certified with accompanying affidavit of identity and certificate of acceptance shall be printed on the ballot for the forthcoming election.

2

> **Candidates so nominated and certified shall not be permitted to withdraw.**
>
> MCL 168.686a(4) (emphasis added). Based on this language, Mr. Kennedy's request to withdraw from the November ballot was rejected. For the same reasons, the renewed request is rejected, and Mr. Kennedy will not be permitted to withdrawn from the November 2024 General Election ballot.

Compl ¶ 10; Compl Ex B.

The next day, on August 30, 2024, Mr. Kennedy filed a complaint in the Court of Claims seeking immediate relief. Compl ¶ 11. The Court of Claims, relying on MCL 168.686a(4), denied the requested relief and dismissed the action on September 3, 2024. Compl Ex. C.

The next day, September 4, 2024, Mr. Kennedy filed an appeal to the Court of Appeals. Compl ¶ 12. On September 6, 2024, around noon, the Court of Appeals issued its decision reversing the Court of Claims' decision because MCL 168.686a(4) plainly does not apply to presidential candidates and remanded for "entry of an order granting immediate mandamus relief (i.e., that Defendant not include Mr. Kennedy's name on the ballot). Compl ¶ 12; Compl Ex. D.

At 3:42 p.m., a few hours after the Court of Appeals decision was entered, on September 6, 2024, Defendant "sent the call of the election and certification of candidates to the 83 county clerks without Kennedy's name listed as the Natural

Law Party's candidate for President." Compl ¶ 13  Defendant did **not** order that

ballot printing be held. Compl ¶ *Id.*

Defendant appealed to the Supreme Court of Michigan later that day and on

September 9, 2024, in a split decision, a majority of that Court held in a one page

decision that mandamus was not appropriate because Mr. Kennedy did not point to

a specific law that demonstrated a clear right to require the Defendant to perform

the specific act of specifically removing him from the ballot, a decision with which

the 15 page dissent strenuously disagreed. Compl Ex. E.

## II.     LEGAL STANDARDS

The standard for granting a temporary restraining order and a preliminary

injunction under Federal Rule 65 is well established.  The moving party must show

that "[1] he is likely to succeed on the merits, [2] that he is likely to suffer

irreparable harm in the absence of preliminary relief, [3] that the balance of

equities tips in his favor, and [4] that an injunction is in the public interest."

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also*

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).  "The probability of

success that must be shown is inversely proportionate to the degree of irreparable

injury that the plaintiffs will suffer absent an injunction."  *State of Ohio ex rel*

*Celebrezze v. N.R.C.*, 812 F.2d 288, 290 (6th Cir. 1987).  In addition, a court may

issue a temporary restraining order without notice to an adverse party "if

immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition . . . ."  Fed. R. Civ. P. 65(b).  As set forth below, Plaintiffs satisfy each of these requirements.

### III.      ANALYSIS

### A.      Plaintiff Satisfies the Requirements for Obtaining a Preliminary Injunction

Plaintiff satisfies the requirements for obtaining a preliminary injunction. For the reasons explained below, (1) Plaintiff has shown a substantial likelihood of success on the merits; (2) Plaintiff will suffer irreparable injury in the absence of immediate relief; (3) the balance of equities weighs in favor of granting an injunction; and (4) issuing an injunction is in the public interest. As a result, Plaintiff respectfully requests that this Court grant his request for a preliminary injunction.

#### 1) Plaintiff has shown a substantial likelihood of success on the merits.

##### a) Count I: Article II, Section 1 of the U.S. Constitution and *Anderson*

As explained in Count I of Mr. Kennedy's Complaint, Article II, Section I of the United States Constitution, as amended by the Twelfth Amendment, envisions an orderly election for the President of the United States by which citizens in this country can vote for candidates running for that office. The votes cast by these citizens would then determine who the electors of that state shall cast their ballots. What this process does not envision is a state presenting a slate of candidates to its

citizens for someone that has withdrawn from the race long before candidates for the ballot were certified and the ballots were printed. But that is precisely what Defendant is seeking to do.

Defendant put out the call of the election and certification of candidates to the 83 county clerks in Michigan without Mr. Kennedy's name on September 6, 2024, which was her often repeated drop dead deadline. Compl ¶ 17. Yet, instead of moving forward with that certainty, Defendant sought to add Mr. Kennedy's name to the ballot for no other possible reason that to confuse unwitting Michigan voters to vote for a candidate no longer running for office. *Id.* For technical reasons the Michigan Supreme Court agreed to let Defendant do same. *Id.*

The U.S. Supreme Court has made plain that this type of conduct should not be countenanced when it comes to electing the President of the United States. It has done so by consistently commanding that states may not impose their stringent ballot access requirements on the national election for President. As explained in *Anderson v. Celebrezze*:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus in **a Presidential election a State's enforcement of more stringent ballot access requirements, including filing deadlines, has an impact beyond its own**

6

> **borders**. Similarly, **the State has a less important interest in regulating Presidential elections than statewide or local elections**, because the outcome of the former will be largely determined by voters beyond the State's boundaries. This Court, striking down a state statute unduly restricting the choices made by a major party's Presidential nominating convention, observed that such conventions serve "the pervasive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State." *Cousins* v. *Wigoda,* 419 U. S. 477, 490 (1975). The Ohio filing deadline challenged in this case does more than burden the associational rights of independent voters and candidates. It places a significant state-imposed restriction on a nationwide electoral process.

*Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983) (emphasis added).[2] Political gamesmanship seeking to have unwitting Michigan voters waste their votes on a withdrawn presidential candidate is not permissible under *Anderson*.

When a presidential candidate has withdrawn prior to the certification by the Secretary of State of the candidates to be placed on the ballots, as occurred here, it is an affront to the constitutional requirement to elect a President under Article II, Section I, as amended, from those running for that office. It also clearly runs headlong into *Anderson*.

At the least, there must be a compelling reason to refuse to honor a request to withdraw that compromises the electoral process of nominating presidential

---

[2] Defendant has, in separate litigation, cited this very case to argue that a free speech analysis should consider the associational rights of the Natural Law Party, but fails to recognize that this same holding undercuts its statutory argument.

candidates. *Id.* As explained by one of the Justices in *Mich Republican State Cent Comm* in which a presidential candidate sought to withdraw after a statutory deadline had passed:

> The Michigan Republican State Central Committee seeks to have [a presidential candidate who withdrew after a statutory deadline for withdrawing from the presidential primary] his name deleted from the ballot lest voters be misled into voting for him in the belief that he is still a candidate for the Republican nomination and to limit the voters' choice to persons who are active candidates for that nomination so that the result of the election will accurately reflect their choice among the active candidates.
>
> There must be compelling reason to enforce time limitations provided by a statute which compromise the process of nominating candidates for the office of President and the right of the people to vote for candidates of their choice.
>
> There is no such compelling reason. There was adequate time, consistent with the holding of an orderly election, after receipt … of notification … of the withdrawal of his candidacy for the Republican nomination, to have removed his name from the ballot in accordance with his request so as to avoid misleading voters … and so that the result of the election accurately reflects voter preference among the active candidates.

408 Mich at 931. Notably, in *Mich Republican State Cent Comm*, *supra.,* the presidential candidate filed a notice to withdraw well past a statutory deadline for a primary and only **26 days** before the election. *Id.* In contrast, Mr. Kennedy here provided notice of withdrawal **75 days** before the election. Compl ¶ 22.

It is also just logical and fair that if a presidential candidate provides the state with adequate notice of withdrawal within a reasonable time prior to an election, let alone prior to finalizing the ballot, as occurred here, there is no compelling reason to keep that candidate's name printed on the election ballot. Compl ¶ 23.

Mr. Kennedy has provided adequate notice and there is no compelling reason for Defendant to make a mockery of the election of the President of the United States envisioned by Article II, Section I, as amended, of the United States Constitution. Undoing her certified notice to all 83 counties to have them now print ballots with Mr. Kennedy's name on them would serve only to mislead voters.

There is no compelling reason to force this confusion. Defendant has stated that "the deadline to finalize ballots is September 6" as is her "deadline to certify candidates to the ballot." Compl ¶ 25. She also advised that on September 6th, she "sent the call of the election and certification of candidates to the 83 county clerks without Kennedy's name listed." *Id.* According to the Defendant herself, it is now too late to do anything differently.

Instead of stepping aside after sending certified candidate names without Mr. Kennedy's name to all 83 counties, Defendant inexplicably insists on placing Mr. Kennedy's name on the ballot. That outcome would violate the United Stats

Constitution and *Anderson* as it serves no purpose other than to undermine the integrity of the election for President of the United States.

Therefore, Plaintiff has shown a likelihood of success as to Count I of his Complaint.

### b) Count II: Equal Protection Clause of the U.S. Constitution

As explained in Count II of Mr. Kennedy's Complaint, the Supreme Court has consistently held that statutes cannot "unfairly or unnecessarily" burden an independent candidate's interest in the "availability of political opportunity."[3] To do so violates the First Amendment. The precedents surrounding ballot-access issues embody a deep-seated fear of two-party entrenchment and what it portends for those outside the two parties—a marginalized and compromised voice.[4] Consistent with that principle, the Supreme Court has held that a statute restricting ballot access is unconstitutional when it practically prohibited a minor political party with a "very small number of members" from appearing on the ballot.[5] It reasoned that voters have a right to "associate for the advancement of political beliefs" and to "cast their votes effectively," regardless of their "political persuasion."[6] Axiomatically, the First and Fourteenth Amendments, viewed together, require that whatever opportunity the major political parties have to

---

[3] *See Lubin v. Panish*, 415 U.S. 709, 716 (1974).

[4] *Williams v. Rhodes*, 393 U.S. 23, 31 (1968).

[5] *Williams,* 393 U.S. at 24.

associate or disassociate from a particular candidate be provided on equal terms to independent, third-party candidates.[7] In other words, what's good for the goose is good for the gander.

Here, Michigan's deadline for presidential candidates to withdraw—as just adjudicated by the Michigan courts—violates this rule. They hamstring third-party candidates, while giving Democrats and Republicans a greater opportunity to withdraw a candidate—as President Biden did. Specifically, the Michigan courts, its Attorney General and its Secretary of State have now all affirmed that the Michigan Election Law Section 168.686a(4) prohibits a minor presidential candidate to withdraw once nominated. But there is no equivalent provision which prohibits a presidential candidate of a major party to withdraw. None.

These statutory deadlines advantage the Democrats and Republicans in multiple ways. They give more time to withdraw. Should a candidate have a scandal (or health issues) just a few months out from the election, the major parties can potentially backtrack and try to get someone else on the ballot. A minor party candidate, however, does not have this luxury. Once nominated, there is no going back.

Here, upon reflection, Kennedy has (like President Biden) decided that for associational and expressive reasons, he does not want to run for President

---

[6] *Id.* at 30.
[7] *See Janus v. AFSCME*, 585 U.S. 878, 891–92 (2018).

anymore. Compl ¶ 34. And Kennedy (like President Biden) decided he wanted to not just be off the ballot, he also wanted to give his endorsement to someone else. *Id.* Kennedy for Trump: Biden for Harris. And Kennedy (like President Biden) wanted to make sure that there was no voter confusion in Michigan—no one thinking that he was soliciting votes. *Id.*  Yet, Michigan's arbitrary, two-tiered deadlines prevent Kennedy (unlike President Biden) from withdrawing and making sure that his message is clear.

The First Amendment safeguards fundamental rights, and unequal treatment of such rights triggers strict scrutiny. In First Amendment parlance: the major parties had an additional month to ensure that Biden was not coerced into speaking a message he didn't desire—I want votes for President—and he was not compelled to associate with a campaign he's not part of.  And put in terms of the Equal Protection Clause, if no prohibition on withdrawal is "good enough" for the Democrats and Republicans to withdraw, then it's "good enough" for Kennedy and any other minor party candidate who wants to remove himself or herself from the ballot. If nothing else, when it comes to fundamental rights, the promise of Equal Protection provides that "good enough" for the major parties applies with equal force to minor party candidates.  Therefore, Plaintiff has shown a likelihood of success as to Count I of his Complaint.

### c) Count III: First Amendment of the U.S. Constitution

If all of the foregoing were not sufficient grounds for Defendant to respect election and ballot integrity and simply leave Mr. Kennedy's name off the ballot, placing his name on the ballot would constitute compelled speech in violation of the United States Constitution as explained in Count III of Mr. Kennedy's Complaint.

The First Amendment proscribes against "abridging the freedom of speech." Here Defendant cannot survive strict scrutiny, let alone provide a legitimate, compelling interest justifying her forcing Mr. Kennedy's speech. Forcing a party to engage in speech they would not otherwise make is compelled speech in its most basic form. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc*., 547 US 47, 63, 164 L Ed 2d 156 (2006) ("Our compelled-speech cases are not limited to the situation in which an individual must personally speak the government's message. We have also in a number of instances limited the government's ability to force one speaker to host or accommodate another speaker's message.").

Defendant is free to write and share with the world her opinion about Mr. Kennedy. That message will be viewed as coming ***from* Defendant**. But when she places his name on the ballot, voters believe that is because Mr. Kennedy wanted his name on the ballot, and that he is asking for their support and their vote. That message will be viewed as coming **from *Mr. Kennedy***, not from Defendant. This is precisely the form of compelled speech the U.S. Constitution is intended to

13

protect against. While Defendant is not harmed in any way by simply leaving Mr. Kennedy's name off of the ballot, compelling Mr. Kennedy to convey a false message to every citizen of Michigan that he is vying for their vote in this state, when he is not, and then subjecting him to the reputational and irreparable harm, and the loss of good will, that flows from this compelled speech violates the First Amendment.

Moreover, Defendant's interpretation of the election statutes runs headlong into Mr. Kennedy's right to be free from compelled speech. *See* U.S. Const. amend. I. In contrast, Mr. Kennedy's interpretation of the statutes does not implicate any party's constitutional rights. As such, the doctrine of constitutional avoidance renders Defendant's position untenable. *See National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 US 1, 30, 57 SCt 615, 621 (1936) ("The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.").

Moreover, Mr. Kennedy has (like President Biden) decided that for associational and expressive reasons, he does not want to run for President anymore. Compl ¶ 43. And Kennedy (like President Biden) decided he wanted to not just be off the ballot, he also wanted to give his endorsement to someone else.

14

*Id.*   Kennedy for Trump: Biden for Harris. By forcibly seeking to include Kennedy's name on the ballot, the Defendant wants to falsely represent to the people of Michigan that Kennedy is running against President Trump in Michigan and is opposed to President Trump's candidacy. Such compelled speech is anathema to the First Amendment.

Nonetheless, Defendant still seeks, via an inapplicable statute, to actively direct that Mr. Kennedy's name be added onto the ballot (after certifying to not include his name on the ballots) which, in effect, would force him to hold himself out as a candidate for President in Michigan, asking for the votes and support of Michigan voters—speech he does not wish to make.

There is no precedent that we could find in which a secretary of state certified the names of all candidates to be printed on the ballots, mailed this certification to all counties, and then sought through judicial decree to force a withdrawn candidates name to be added to a ballot against the candidate's desired speech. This runs headlong into precisely what compelled speech intends to prevent—a government official seeking to force an individual, here Mr. Kennedy, to engage in speech, that he is running for president, he has emphatically rejected weeks prior.

Defendant's relentless and unauthorized attempt to have Mr. Kennedy convey a message to Michigan voters he insists on not conveying not only harms

Mr. Kennedy but also harms every citizen in Michigan. Defendant should not include Mr. Kennedy's name on "the ballot in accordance with his request so as to avoid misleading voters … and so that the result of the election accurately reflects voter preference among the active candidates." *Mich Republican State Cent Comm, supra,* 408 Mich at 931.

Applying the foregoing to the *Anderson-Burdick* analysis, Mr. Kennedy prevails. The first step is to determine the burden the regulation at issue imposes on Mr. Kennedy which is addressed *supra*. The second step is to consider the state's justification for the restriction. Here, Defendant has provided no valid explanation for why, after sending out the call of the election and certification of candidates without Mr. Kennedy's name, she is fighting to add his name. This is plainly not about deadlines or ballot printing processes. This is about Defendant's desire to force Mr. Kennedy to convey to all Michigan voters a message that he desires their votes, when he doesn't. This shows why the third step, assessing whether "the state's restrictions are constitutionally valid given the strength of its proffered interests," also weighs in Mr. Kennedy's favor. The orderly administration of elections is best preserved by Defendant stepping aside and allowing the ballot process to continue, without Mr. Kennedy's name, on the original timeline anticipated by the state and as she has already certified to all 83 counties. Plaintiff has therefore shown a likelihood of success as to Count III of his Complaint.

**2)    Plaintiff will suffer irreparable injury in the absence of immediate relief.**

Mr. Kennedy stands to suffer irreparable harm if he appears on the ballot. Printing and mailing ballots with Mr. Kennedy's name appearing as a candidate for an office he no longer seeks cancels his statutory and constitutional rights. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") Among other concerns, his supporters will be left confused and potentially angry should they later learn that a vote cast for Mr. Kennedy in Michigan was an invalid, wasted vote. All of this will lead to reputational harm, loss of good will, anger, and derision. Compl ¶ 48. Voters will not direct that anger and frustration at Defendant, but at Mr. Kennedy. Indeed, if ballots are printed and mailed with Mr. Kennedy's name on them, the harm will be done, rendering the case moot and Defendant's transgressions non-redressable.

**3) The balance of equities weighs in favor of granting an injunction.**

Meanwhile, Defendant cannot point to any harm independent of her own actions. By wasting time rejecting Mr. Kennedy's proper requests to withdraw, Defendant hoped to run out the clock on any possibility of Mr. Kennedy obtaining meaningful judicial relief. But Defendant's regrets do not constitute irreparable injury.

In fact, all of Defendant's arguments to date completely undercut any claims of irreparable harm now made. Until the moment she lost at the Court of Appeals, Defendant argued she must keep Mr. Kennedy's name on the ballot because there was no time to take it off the ballot and still satisfy state and federal deadlines concerning ballots. (To be sure, this was always a nonsensical argument because all she had to do was not include Mr. Kennedy's name on the list of candidates she would distribute on September 6.) But then, when the Court of Appeals mandated Mr. Kennedy's name not be included at around noon on September 6, a few hours later Defendant was able to do that which she claimed was impossible: she sent out the certified candidates' names to all 83 counties ***without*** including Mr. Kennedy's name. Defendant said she needed a decision by September 6 to meet the deadline for sending out names, she got an answer by that date, and she sent out the candidate names for ballot printing without Mr. Kennedy's name. No harm incurred.

But because not including Mr. Kennedy on the ballot was not an outcome that the Defendant liked, she then—for reasons that cannot have anything to do with the orderly and timely printing of ballots—sought to upend her own certified list of candidates and the corresponding finality and certainty that resulted from the Court of Appeals decision.

As admitted by the Secretary when she appealed the Court of Appeals decision last weekend, her own September 6th deadline for certifying candidate names was meaningless. And if the Secretary was okay with relaxing that deadline for a few days so that she could try to get a favorable court ruling, then she cannot be harmed by the relief sought here on an expedited basis.

**4) Issuing an injunction is in the public interest.**

There is an undeniable interest in avoiding ballot confusion, as well as having a ballot where each qualified voter and their vote is counted equally. Should Mr. Kennedy be forced onto the ballot despite his withdrawal over two weeks ago, those foundational principles would be upended. Including Mr. Kennedy's name on the ballot would add to voter confusion and have voters throw away votes on a withdrawn candidate. All for what? So that Defendant can meet her personal agenda of having Mr. Kennedy's name on the ballot which she knows can have only one result – Michigan voters throwing away their vote for a candidate that has withdrawn? Ensuring that ballots accurately reflect the candidates in the election is the actual public interest at stake. Failure to remove Mr. Kennedy's name risks voter confusion and undermines the integrity of the electoral process.

Defendant is prioritizing theoretical harm to the Natural Law Party while not showing any concern for Michigan voters in order to further her agenda to force

19

Mr. Kennedy to be on the ballot. This is the antithesis of avoiding public harm. Members of the public who throw away their vote can never get that vote back.

Public interest favors granting injunctive relief because of the undeniable interest in avoiding ballot confusion, as well as having a free and fair ballot where each qualified voter and their vote is counted equally. By forcing Kennedy to remain on the ballot despite his withdrawal from the contest over two weeks ago, Defendant is bringing those foundational principles into jeopardy. For these reasons, issuing an injunction is in the public interest.

### B. Plaintiff Satisfies the Requirements for Receiving a Temporary Restraining Order

This Court should also issue a temporary restraining order to prevent Defendant's ongoing violations of the U.S. Constitution.  The Verified Complaint and the arguments above establish that, unless this Court grants immediate relief, Plaintiff will suffer "immediate and irreparable injury."  Fed. R. Civ. P. 65(a). *See also* Compl. ¶¶ 27-28, 34, 36-37, 48-49. Further, Defendant's ongoing violations of the U.S. Constitution threaten to undermine the integrity and fairness of the election in ways that cannot be traced or remedied after the fact. Michigan voters casting a ballot for Mr. Kennedy will be throwing away their vote for a candidate that has withdrawn from the race, and the only reason that dynamic exists is because Defendant refuses to remove Mr. Kennedy from the ballot.

Furthermore, Plaintiffs' attorney has made reasonable efforts to notify Defendant about this lawsuit by emailing Defendant's known counsel prior to this filing and informing them that Mr. Kennedy would be filing suit and seeking immediate injunctive relief. Based on the pendency of the need to begin printing ballots, which the Secretary has already relaxed so that she could seek a judicial decision with which she agreed, as well as the threat that Defendant's conduct poses to Plaintiff's fundamental rights and the integrity of the electoral process and accuracy of the results, this Court should grant Plaintiff's request for a TRO immediately.

## IV.　**CONCLUSION**

For these reasons, this Court should grant Plaintiff's request for a temporary restraining order and preliminary injunction.

Dated:  September 10, 2024　　　　Respectfully submitted,

　　　　　　　　　　　　　 _/s/ Brandon L. Debus_
　　　　　　　　　　　　　DICKINSON WRIGHT PLLC
　　　　　　　　　　　　　2600 W. Big Beaver Rd., Ste. 300
　　　　　　　　　　　　　Troy, MI 48084
　　　　　　　　　　　　　(248) 433-7674
　　　　　　　　　　　　　BDebus@dickinsonwright.com
　　　　　　　　　　　　　_Attorney for Plaintiff_

### **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and served Defendant via email upon the following: Heather S. Meingast, Division Chief,

Civil Rights & Elections Division, Michigan Department of Attorney General,
meingasth@michigan.gov

/s/ *Brandon L. Debus*
Brandon L. Debus