# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT F. KENNEDY, JR.,

    Plaintiff,

Case No. 24-cv-12375-DPH-KGA

vs.

JOCELYN BENSON, in her official capacity as Michigan Secretary of State,

    Defendant.

_____

| | |
|---|---|
| Brandon L. Debus (P81159)<br>Dickinson Wright PLLC<br>2600 W. Big Beaver Rd., Ste. 300<br>Troy, MI 48084<br>(248) 433-7200<br>BDebus@dickinson-wright.com<br>*Attorneys for Plaintiff, Robert F. Kennedy, Jr.* | Heather S. Meingast (P55439)<br>Erik A. Grill (P67413)<br>Assistant Attorneys General<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659<br>meingasth@michigan.gov<br>grille@michigan.gov<br>*Attorneys for Defendant Jocelyn Benson* |

_____

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION</u>**

Plaintiff, Robert F. Kennedy, Jr. ("Kennedy" or "Plaintiff"), through his counsel Dickinson Wright PLLC, respectfully submits this Reply Brief in Support of Plaintiff's Motion for Preliminary Injunction.

I. **Plaintiff Has Successfully Satisfied All of the Factors Necessary for Granting a Preliminary Injunction**

In her Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, Secretary Benson attempts to create her own narrative of events and ignores the consequences of her actions. This litigation is occurring because the Secretary has opted to place her own political agenda before her public duties and the public's interest. For the reasons set forth below, the Secretary's argument is without merit and the Court should enter an Order requiring Plaintiff's name to be removed from the ballot.

A. **Plaintiff is likely to succeed on the merits.**

1. **Plaintiff's claims are not barred by the doctrine of laches.**

An action may be barred by laches only if: (1) the plaintiff delayed unreasonably in asserting their rights and (2) the defendant is prejudiced by this delay. *Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Laches is an equitable doctrine, the parties asserting it must not have "unclean hands" themselves. *See Davis v. Wayne Co. Election Comm.*, No. 368615, 2023 WL 8656163, at *7 (Mich. Ct. App. Dec. 14, 2023), citing *Attorney General v. Thomas Solvent Co.*, 146 Mich. App. 55, 66, 380

1

N.W.2d 53 (1985). *See also Bein v. Heath*, 47 U.S. 228, 248 (1848) ("It is a principle in a chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity."). Equity also "should take into account possible injury to the public." *Davis*, 2023 WL 8656163, at *7, citing *Precision Instrument Mfg. Co. v. Auto Maintenance Machinery Co.*, 324 U.S. 806, 814-815 (1945).

Secretary Benson is unable to establish either of the aforementioned elements, and her conduct demonstrates that she has failed to act with clean hands. First, Plaintiff initiated this action as soon as practicable. Secretary Benson's argument that "Kennedy could have filed parallel actions, with his state law claims filed in Michigan courts and any federal claims presented to this Court" and that his failure to initiate this action on August 30, the date on which he filed his state action, is not based upon any legal principle. Rather, it is based upon her own personal opinion, as demonstrated by the lack of relevant case law cited in her argument. *See* ECF 8 at 18. The fact of the matter is that the Michigan Supreme Court issued its Opinion and Order on September 9, 2024. *See* ECF 1-6. Plaintiff initiated this lawsuit the

very next day – on September 10, 2024.¹ *See* ECF 1. Clearly, Plaintiff did not delay commencing this action.

Finally, it is irrelevant that the ballots may have been printed by various counties. The ballots were sent to print with Plaintiff's name listed despite the fact that the Secretary knew—well in advance of the September 6, 2024 certification deadline—that Plaintiff was no longer running for president. In fact, the Michigan Court of Appeals issued its Order on September 6, 2024, instructing the Secretary to remove Plaintiff's name from the ballot, and yet, she chose to ignore the Court's Order.² *See* ECF 1-5. The mere fact that Plaintiff's claim may be inconvenient to the Secretary—who ordered the printing of ballots two weeks after becoming aware of Plaintiff's withdrawal from the race—is of no consequence as to whether either of the aforementioned elements of laches have been established; especially where that inconvenience was caused entirely be Secretary Benson herself.

**2. Plaintiff's claims are not barred by the doctrine of res judicata.**

---

¹ The Secretary makes a point of addressing the specific time that she was served with a copy of the brief, as well as the specific time that the brief was filed. *See* ECF at 19. This argument is a red herring, and the record in this matter speaks for itself.
² The Secretary admits that she did not order the clerks to hold the printing of the ballots on September 6, 2024, despite the fact that the Michigan Court of Appeals ordered that she remove Plaintiff's name from the ballot. *See* ECF 8 at 19. If the Secretary is willing to so blatantly violate a Court Order, it begs the question as to the number of statutes she has willingly violated behind closed doors.

3

The Secretary is so fixated on keeping Plaintiff on the ballot that she is willing to raise any argument, even if it means contradicting herself. Secretary Benson argues that Plaintiff should have filed a parallel action alongside his state court action (ECF 8 at 18) but then argues that Plaintiff should have raised the claims arising under federal law, which were not ripe at the time, at the state level (ECF 8 at 22-25). "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in the prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), *quoting Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The Secretary is unable to establish this key element of res judicata.

Plaintiff filed his state court action on August 30, 2024, based upon the Secretary's refusal to accept Plaintiff's withdrawal from the presidential race. *See* ECF 8-9. On September 3, 2024, the Michigan Court of Claims denied Plaintiff's request for relief, and, on September 4, 2024, Plaintiff appealed. On September 6, 2024, around noon, the Court of Appeals issued its decision reversing the Court of Claims' decision because MCL 168.686a(4) plainly does not apply to presidential candidates and remanded for "entry of an order granting immediate mandamus relief (*i.e.*, that the Secretary not include Mr. Kennedy's name on the ballot). ECF 1 at ¶ 12. At 3:42 p.m., a few hours after the Court of Appeals decision was entered, on September 6, 2024, Defendant "sent the call of the election and certification of

4

candidates to the 83 county clerks without Kennedy's name listed as the Natural Law Party's candidate for President." ECF 1 at ¶ 13. The Secretary's actions on September 6, 2024 were not ripe for consideration at the time the state court action was filed on August 30, 2024. In other words, the instant matter concerns the Secretary's blatant disregard for the Court of Appeals' Order and her deliberate action of informing counties to list Plaintiff as a presidential candidate on the November 2024 ballot. These facts had not yet occurred at the time the first action was filed and, therefore, cannot be barred by res judicata. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006) (finding that claims based upon conduct after the breach of contract suit was filed were not barred by res judicata because "those alleged actions had not yet occurred" at the time the first lawsuit had been filed). It was not until the Michigan Supreme Court issued its decision, on September 9, and Secretary Benson began the ballot-printing process that Plaintiff's claims arose and were capable of being raised. As such, Secretary Benson cannot establish the third element of *res judicata*, i.e., that "the matter in the second case was or could have been resolved in the first." ECF 8 at 22, *quoting Adair v. State Dept. of Ed.*, 680 N.W.2d 386, 396 (2004).

    **3.    Plaintiff has successfully pled his Article II, § 1 claim.**

The Secretary attempts to distinguish *Anderson v. Celebrezze*, 460 U.S. 780 (1983) on basis that Plaintiff was not denied ballot access. But such an argument

5

misses the point of the case. *Anderson* focuses on whether unconstitutional burdens are placed upon independent candidates and their supporters. *See id*. at 792 (identifying how the challenged statute impacted a candidate's decision whether to run for office, the impact on signature-gathering efforts, and the burden on voters). "'For even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty.'" *Id*. at 806, *quoting Dunn v. Blumstein*, 405 U.S. 330, 343 (1972). This proposition is true regardless of whether the factual scenario in *Anderson* matches that of the instant matter.

Further, the Secretary relies upon *Storer v. Brown*, 415 U.S. 725, 735 (1974) for the proposition that "'a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies.'" ECF 8 at 27.[3] To imply that Plaintiff's candidacy was fraudulent or frivolous in any manner is flat out false. As an independent/third party candidate, Plaintiff ran a successful campaign throughout the United States. Ultimately, he decided to suspend his campaign—the reasons for his personal decision are entirely irrelevant to this matter.

---

[3] Plaintiff also attempts to argue that "sore loser" laws and disaffiliation statutes demonstrate that her failure to remove a candidate who wants to withdraw from the presidential race is justified. While this argument was difficult to follow, it appears that she is contending that, because "sore loser" laws and disaffiliation statutes have been found to be constitutional, Michigan's law prohibiting independent candidates from withdrawing from the presidential race is also constitutional. There is absolutely no connection between "sore loser" laws and disaffiliation statutes, both of which concern qualification for the ballot, and the relevant portion of MCL 168.686a, which concerns a candidate's ability to withdraw from the race and not be listed on the ballot.

6

Assuming *arguendo* that the Secretary is correct that the State has an interest in preventing frivolous or fraudulent candidacies, one must ask: what happens when the State is perpetuating a fraud upon the public by leaving a candidate's name on the ballot, despite the candidate's withdrawal? It would appear that such conduct by the State would be perpetuating a fraudulent candidacy, which is exactly what the Secretary has admitted she has an obligation to prevent. Plaintiff withdrew himself from the race and Secretary Benson was well aware of that fact long before the ballot certification deadline, but she decided that Plaintiff must remain on the ballot simply because it sees to benefit her preferred Presidential candidate. Public officials should not, and must not, be permitted to elevate political loyalty over public interest and duty.

### 4. Plaintiff's Fourteenth Amendment Equal Protection Claim is legally sound.

Secretary Benson argues that, because "no major party candidates have been permitted to withdraw after being nominated," (ECF 8 at 31), Plaintiff's claim fails. Such an argument is a red herring.

"A state law's burden on a political party, an individual voter, or a discrete class of voters must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 128 S.Ct. 1610, 1611 (2008), *quoting Norman v. Reed*, 502 U.S. 279, 288-89, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). Secretary Benson's argument fails to

7

demonstrate how her refusal to allow Plaintiff to withdraw from the ballot protects any legitimate state interest. In conclusory fashion, the Secretary contends that Plaintiff "was not treated any differently as a minor party nominee" (ECF 8 at 32), but she fails to address the substance of an equal protection claim – "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609 (1974). As stated in Plaintiff's Complaint, Kennedy has (like President Biden) decided that for associational and expressive reasons, he does not want to run for President anymore. And Kennedy (like President Biden) decided he wanted to not just be off the ballot, he also wanted to give his endorsement to someone else. Kennedy for Trump: Biden for Harris. And Kennedy (like President Biden) wanted to make sure that there was no voter confusion in Michigan—no one thinking that he was soliciting votes. Yet, Michigan's arbitrary, two-tiered deadlines prevent Kennedy (unlike President Biden) from withdrawing and making sure that his message is clear. But rather than address this substantively, the Secretary asserts that the issue of Biden withdrawing "never existed." ECF 8 at 31. Secretary Benson relies upon this argument because she cannot substantively combat that fact that she has violated Plaintiff's Fourteenth Amendment rights.

Finally, the Secretary lacks standing to argue that Plaintiff's decision to withdraw adversely impacts the Natural Law Party's right to have a candidate listed on the ballot. ECF 8 at 33-34. Any such argument should be left to the Natural Law

8

Party and its members and, notably, neither the Natural Law Party nor any of its members have sought to intervene in the state litigation or in this federal lawsuit. Regardless, the fact of the matter is: holding President Biden and Plaintiff to different standards with respect to withdrawing from the ballot is a violation of Plaintiff's Fourteenth Amendment rights.

### 5. Plaintiff has successfully pled his First Amendment claim.

In support of her argument, Secretary Benson relies on *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) for the proposition that, "Ballots serve primarily to elect candidates, not as forums for political expression." ECF 8 at 35. Unfortunately for the Secretary, the use of the word "primarily" does not mean that a ballot does not serve another purpose.

Moreover, *Timmons* is easily distinguishable from the matter at hand. *Timmons* concerned Minnesota's fusion ban, which prevented an individual from appearing on the ballot as the candidate of more than one political party. *See Timmons*, 520 U.S. at 353-54. The United States Supreme Court noted that Minnesota's fusion ban was narrowly tailored to the State's goal of upholding the integrity of elections by preventing the "transform[ation] [of] the ballot from a means of choosing candidates to a billboard for political advertising." *Id*. at 365. That is not even close to what is transpiring in this matter.

9

"A 'general principle of compelled speech jurisprudence … is that a violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion.'" *Wilkins v. Daniels*, 744 F.3d 409, 414 (6th Cir. 2014), *quoting C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005). "'In order to compel the exercise of suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is "regulatory, proscriptive, or compulsory in nature."'" *Wilkins*, 744 F.3d at 414, *quoting Phelan v. Laramie Cnty. Cmty. Coll. Bd. Of Trs.*, 235 F.3d 1243, 1247 (10th Cir. 2000) (quoting *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)).

Here, it is clear that the Secretary is compelling Plaintiff to remain on the ballot, despite his timely withdrawal from the presidential race. MCL 168.686a is a regulation that is proscriptive in nature, as it restricts Plaintiff's ability to withdraw his name as a candidate for office. The First Amendment generally protects the rights of individuals, such as Plaintiff, to engage in political speech or other political activities. *See Citizens United v. FEC*, 558 U.S. 310, 339-40 (2010); *Elrod v. Burns*, 427 U.S. 347, 356 (1976). Secretary Benson's argument that "Kennedy's change of heart does not outweigh the right of military and overseas voters to receive their ballots on time" (ECF 8 at 38) is an attempt to rewrite the facts in the matter. Plaintiff informed the Secretary of his desire to withdraw from the race on August 23 – approximately one month prior to the September 21 deadline to deliver ballots to

10

military and overseas voters (ECF 8 at 37) and weeks in advance of the September 6, 2024 certification deadline. The bottom line is that Secretary Benson refused to honor Plaintiff's notice of withdrawal and now has created her own problem. Kennedy should not be punished because the Secretary placed her own political agenda above Plaintiff's First Amendment rights.

Finally, the Secretary's statement that there is no applicable precedent (ECF 8 at 36-37) does not automatically require this Honorable Court to hold in the Secretary's favor. Rather, this is unprecedented because governments in states outside of Michigan understand that you cannot compel a candidate to remain listed on the ballot when he or she files the proper withdrawal paperwork weeks in advance of the ballot printing deadline. In other words, there is no need to explain to secretaries in other jurisdictions that Secretary Benson's actions infringe on a candidate's First Amendment protections, because those secretaries understand that concept without having to engage in litigation.[4]

**B.     Plaintiff has successfully demonstrated irreparable harm.**

Apparently, the Secretary believes that violations of constitutional rights do not constitute irreparable harm. *See* ECF 8 at 40. In a conclusory fashion, the Secretary asserts that Plaintiff is unable to demonstrate irreparable harm, but she

---

[4] The Secretary asserts that Plaintiff's activities in other jurisdictions are somehow dispositive of whether her actions are proper. ECF 8 at 37-38. Plaintiff's access to the ballot in other jurisdictions is of no consequence under Michigan law, as each state has the right to regulate its own elections.

11

fails to explain why. *See id.* This is simply because she knows that Plaintiff has satisfied this element.

The irreparable harm here is obvious—printing and mailing ballots with Mr. Kennedy's name appearing as a candidate for an office he no longer seeks cancels his statutory and constitutional rights. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 2690, 49 L.Ed2d 547 (1976), *citing New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

Moreover, Plaintiff will suffer reputational harm, as his supporters will be left confused and potentially angry should they later learn that a vote cast for Mr. Kennedy in Michigan was an invalid, wasted vote. Therefore, Plaintiff has sufficiently established irreparable harm.

  **C.** **The balance of the harms and public interest weigh in favor of granting the preliminary injunction.**

Secretary Benson claims that, "[w]hile there will be no irreparable harm to Kennedy without an injunction, an injunction will irreparably harm the State and its voters." (ECF 8 at 41). Such a statement is conclusory, and the Secretary fails to identify any case law to support her position. Instead, Secretary Benson focuses on

the fact that the states have an interest in enforcing their election laws. *See* ECF 8 at 41-44. For the reasons set forth below, the Secretary is clearly advancing a political position, as opposed to a position that would uphold the integrity of Michigan elections.

First, the case law cited by the Secretary fails to support any of her purported arguments. Secretary Benson cites to *Republican National Committee v. Democratic National Committee*, 589 U.S. 423, 424 (2020) for the proposition that, "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). ECF 8 at 41. In contrast, this matter was not commenced on "the eve of an election." *Republican National Committee* concerned "a narrow, technical question about the absentee ballot process" and the preliminary injunction was issued just five days before the primary election. *See Republican National Committee*, 589 U.S. at 423. There are significantly more than five days until the November 5, 2024 election, and the subject matter at issue in *Republican National Committee* is not even remotely close to that currently presented to the Court.

Next, Secretary Benson asserts that, because she has already instructed counties to begin printing ballots, the counties will have to bear the expense of reprinting. ECF 8 at 42. She bases her actions on the proposition that states have an interest in enforcing their own election laws. *See id.*, *citing Hunter v. Hamilton County Bd. Of Elections*, 635 F.3d 219 (6th Cir. 2011). *Hunter* concerned how a

13

county board of elections handled the review and tabulation of provisional ballots. The plaintiff in *Hunter* sought a judicial office in Ohio in the November 2010 election and sought injunctive relief based on the fact that the county board had failed to abide by its own policies with respect to investigating the validity of provisional ballots. *See id*. Although the Court acknowledged that the state had a compelling interest, the Court, in affirming the district court's decision to grant the injunction, also understood that the electoral process does not revolve around the government alone: "We are therefore guided in our analysis by the important requirement that state actions in election processes must not result in 'arbitrary and disparate treatment of votes.'" *Id*. at 235. As discussed above with respect to Plaintiff's equal protection claim, Michigan's deadline for presidential candidates to withdraw—as just adjudicated by the Michigan courts—violates this rule, as it affords Democrats and Republicans a greater opportunity to withdraw a candidate than do third parties. In other words, an interest in enforcing state election laws does not surpass one's duty to adhere to the United States Constitution.

Secretary Benson also relies on *Gelineau v. Johnson*, 896 F. Supp.2d 680, 683-86 (2012) for the proposition that a court denied a preliminary injunction on the basis that the secretary would have been prejudiced. *See* ECF 8 at 42. In *Gelineau*, however, the plaintiffs sought an order preventing the secretary from printing the ballots unless the candidate's name was listed on the ballot as a candidate for President. *See Gelineau*, 896 F. Supp.2d at 681. The Court found "that Plaintiffs

14

have failed to exercise proper diligence in asserting their claims and that this failure has prejudiced the Secretary." *Id*. Contrary to the Secretary's assertion, that *Gelineau* was decided on the basis of public interest outweighing the harm to the plaintiffs, the case was decided based on the doctrine of laches. *See id.* at 686 ("Even assuming that the other three factors—irreparable injury, substantial harm to others, and the public interest—favor injunctive relief, the fact that Plaintiffs' claims are barred [by laches] is dispositive here."). As explained above, laches is not applicable here.

Finally, the Secretary's contentions that "the harms alleged by Kennedy may just as readily be ascribed to his own delays in seeking withdrawal and filing suit" and that "Kennedy may be sowing his own voter confusion" (ECF 8 at 43-44) are not only factually incorrect but are also completely irrelevant to determining whether the harm outweighs public interest. Such statements clearly demonstrate that the Secretary is placing partisan interests over those of the public, as she is compelling Kennedy's speech and misrepresenting to the public that Kennedy is willing to serve as President if elected. Democrats across the United States have sought to punish left-leaning third party candidates and their constituents for disagreeing with the Democratic Party's regime. That is exactly what the Secretary is doing in this instance, and her behavior should not be countenanced by this Honorable Court.

## CONCLUSION

For the foregoing reasons, this Honorable Court should grant Plaintiff's request for a preliminary injunction.

Respectfully submitted,

By: */s/ Brandon L. Debus*
Brandon L. Debus (P81159)
Dickinson Wright PLLC
2600 W. Big Beaver Rd., Ste 300
Troy, MI 48084
(248) 433-7200
BDebus@dickinson-wright.com
*Attorneys for Plaintiff Robert F. Kennedy, Jr.*

Dated: September 16, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, I electronically field the above document with the Clerk of Court using the ECF System, which will provide electronic copies to all parties and counsel of record.

*/s/ Brandon L. Debus*
Brandon L. Debus (P81159)