UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT F. KENNEDY, JR.,

      Plaintiff,                        Case No. 24-12375

v.                                       Hon. Denise Page Hood

JOCELYN BENSON, in her official
capacity as Michigan Secretary of State,

      Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [2]

### I.    INTRODUCTION

Before the Court is Plaintiff Robert F. Kennedy, Jr.'s Motion for Temporary Restraining Order and Preliminary Injunction. [ECF No. 2]. Defendant Jocelyn Benson filed a response on September 11, 2024, two days following the initiation of this case. [ECF No. 8]. The Court issued an Order denying Plaintiff's motion for temporary restraining order, finding that Plaintiff failed to satisfy Federal Rule of Civil Procedure 65(b). [ECF No. 12].

Plaintiff moves this Court for issuance of a preliminary injunction barring Defendant from "improperly and illegally plac[ing] Mr. Kennedy's name on the 2024 general presidential election ballot despite the fact that he has withdrawn from the 2024 presidential race and has specifically requested his name be removed from

the ballot." *Id*. at PageID.59. Plaintiff alleges three counts: Count I – violation of Article II, Section 1 as applied in *Anderson v. Celebrezze*, 460 U.S. 780, (1983); Count II – violation of the Equal Protection Clause of the Fourteenth Amendment; and Count III – violation of the First Amendment. For the reasons stated herein, Plaintiff's motion is denied.

## II.    BACKGROUND

Plaintiff was nominated by the Natural Law Party as its 2024 candidate for the office of the President of the United States. [ECF No. 1, PageID.2]. On August 23, 2024, Plaintiff suspended his campaign and sent a withdrawal notice and formal request to withdraw from the 2024 general election in Michigan. [ECF No. 2, PageID.64]. On August 26, 2024, Defendant rejected Plaintiff's withdrawal notice, citing MCL §168.686a(2). *Id*., see also ECF No. 1-3. On August 27, 2024, Plaintiff renewed his request to withdraw. *Id*. at PageID.65. Plaintiff's withdrawal was, again, rejected citing MCL § 168.686a(4). *Id*.

On August 30, 2024, Plaintiff filed a complaint in the Michigan Court of Claims seeking mandamus relief, injunctive relief, and declaratory relief. [ECF No. 1-4, PageID.31]. The Court of Claims denied Plaintiff's requested relief and dismissed the action, reasoning that MCL § 168.686a(4) applies and on balance, Plaintiff's interest in withdrawing from the race for President of the United States is

outweighed by the Natural Law Party's interest in having a candidate at the top of its ticket. *Id*. at PageID.33-34.

Plaintiff appealed the Court of Claims' decision and on September 6, 2024, the Michigan Court of Appeals issued its decision reversing the Court of Claims' decision and remanding the case for entry of an order granting immediate mandamus relief. [ECF No. 2, PageID.66]. That same day, Defendant sent the call of the election and certification of candidates to all 83 county clerks without Plaintiff's name listed as the Natural Law Party's candidate for President but did not order that ballot printing be held. *Id*. at PageID.66-67.

Defendant appealed to the Michigan Supreme Court, which reversed the Court of Appeals' decision and held Plaintiff failed to show an entitlement to mandamus relief. Specifically, the Supreme Court found that "plaintiff has neither pointed to any source of law that prescribes and defines a duty to withdraw a candidate's name from the ballot nor demonstrated his clear right to performance of this specific duty, let alone identified a source of law written with such precision and certainty as to leave nothing to the exercise of discretion or judgment." [ECF No. 1-6, PageID.38] citing *Taxpayers for Mich Constitutional Gov't v. Michigan*, 508 Mich 48, 82 (2021) (internal quotation marks omitted). The Supreme Court vacated the Court of Claims' opinion "except for that part of the Court of Claims' order denying the motion for

immediate mandamus relief and temporary restraining order/injunction and dismissing the complaint with prejudice, which we REINSTATE." *Id*. at PageID.37.

Plaintiff seeks a preliminary injunction enjoining Defendant from including Plaintiff's name on the 2024 general election ballot. [ECF No. 2].

## III.   ANALYSIS

"Issuance of a preliminary injunction is an extraordinary remedy." *JGMM realty, L.L.C. v. LNR Partners, L.L.C.*, No. 16-10633, 2016 WL 1719925, *1 (E.D. Mich. April 28, 2016). "A plaintiff seeking a preliminary injunction must establish (1) that [s]he has a strong likelihood to succeed on the merits; (2) that [s]he is likely to suffer irreparable harm without the injunction; (3) that the injunction would not cause substantial harm to others; and (4) that an injunction is in the public interest." *Id*. quoting *Livonia Property Holdings v. 12840-12976 Farmington Rd. Holdings*, 717 F. Supp. 2d 724, 731 (E.D. Mich. 2010). "Although the factors are to be balanced, a finding that there is no likelihood of irreparable harm, *Winter*, 129 S.Ct. at 375, or no likelihood of success on the merits, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir.2000), is usually fatal." *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011).

### A. Likelihood of Success

#### 1.  Res Judicata

Plaintiff is not likely to succeed on the merits of this case because each of his claims are barred by the doctrine of res judicata. "Pursuant to the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) *quoting Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citations omitted). Res judicata applies in instances where there has been "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Id*. *quoting Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir.1997). Res Judicata also applies to instances where a plaintiff fails to raise a claim in prior litigation against the same defendant, arising out of the same set of facts. *See Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004); *Etherton v. Serv. First Logistics, Inc.*, 807 F. App'x 469, 471 (6th Cir. 2020).

Here, Plaintiff raised, and the Michigan Court of Claims rejected Plaintiff's First Amendment compelled speech argument. See ECF No. 1-4, PageID.34. ("Plaintiff's final argument about compelled speech reveals that he does not appreciate his role as the nominee of a party based on a nomination he accepted, as opposed to a candidate simply in his own right."). The Court went on to balance the

harm faced by the Natural Law Party if Plaintiff was able to unilaterally withdraw. *Id*. This constitutes a final decision on the merits of Count III of Plaintiff's Complaint now before this Court.

Further, the issues presented to the Court of Claims arose from the same set of facts presented before this Court. [ECF No. 1-4]. Plaintiff argues that he failed to raise his present constitutional claims (Counts I and II) before the Court of Claims because they were not ripe at the time. [ECF No. 13, PageID.286]. Plaintiff further argues that he "filed his state court action on August 30, 2024, based upon the Secretary's refusal to accept Plaintiff's withdrawal from the presidential race" and the present matter concerns "her deliberate action of informing counties to list Plaintiff as a presidential candidate on the November 2024 ballot." *Id*. at PageID.286-7. In his reply and at oral argument, Plaintiff argued that this case concerns Defendant's disregard of the Court of Appeals' order to keep his name off the ballot.[1]

The Court is not persuaded. Plaintiff's Complaint consistently alleges harm stemming from Defendant's rejection of Plaintiff's withdrawal. See ECF No. 1, PageID.8-10. The Complaint further states "keeping Mr. Kennedy's name *off* the ballot as he requested would cause *no* harm to Defendant." [ECF No. 1, PageID.11].

---

[1] It is axiomatic that this Court is not the proper venue to litigate any issue that Plaintiff has with Defendant's conduct related to a standing state court order.

Plaintiff's requested relief is for the Court to "enter an order enjoining Secretary Benson from *including* Robert F. Kennedy, Jr.'s name on the 2024 general election ballot[.]" *Id*. (emphasis added)

The allegations in the Complaint reflect that Plaintiff seeks relief related to Defendant's rejection of his notice of withdrawal which has been litigated through the courts of Michigan at which time his remaining claims could have been raised.

Count I alleges that Defendant is attempting to violate Article II, § 1 of United States Constitution based on the Supreme Court's decision in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) by interfering with the efficiency of the election. [ECF No. 1, PageID.6]. This claim is directly related to Defendant's rejection of Plaintiff's notice of withdrawal because it was at the point of rejection that Plaintiff was aware that his name would continue to be on the ballot but for some authoritative intervention in his favor. Plaintiff could have but failed to raise this claim in the Court of Claims matter initiated on August 30, 2024. Res judicata applies to Count I.

Count II alleges that Michigan's deadline for presidential candidates to withdraw violates the First and Fourteenth Amendments. [ECF No. 2, PageID.73]. Plaintiff argues that "the Michigan courts, its Attorney General and its Secretary of State have now all affirmed that MCL 168.686a(4) prohibits a minor presidential candidate to withdraw once nominated. But there is no equivalent provision which

7

prohibits a presidential candidate of a major party to withdraw." *Id*. at PageID.74. Plaintiff further alleges that the statutory deadlines advantage the Democrats and Republicans by giving them more time to withdraw. *Id*. This claim became ripe as early as he was nominated as the Presidential candidate for a minor party. Even if that is not so, the claim was ripe on August 29, 2024, when Defendant rejected his withdrawal notice. This claim could have also been raised in the Court of Claims and so res judicata applies.

Plaintiff had the opportunity to bring his additional constitutional claims at the time that he filed his initial complaint with the Court of Claims. Plaintiff now pleads before this Court seeking a second bite at the apple, to which he is not entitled. Therefore, res judicata is applicable to the claims brought in the present matter and Plaintiff's motion for preliminary injunction is not appropriate.

## 2. Laches

Plaintiff is also not likely to succeed based on the doctrine of laches. An action may be barred by laches if: (1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant is prejudiced by this delay. *Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). "[W]hen laches appears, the court merely leaves the parties where it finds them." *Knight v. Northpointe Bank*, 300 Mich. App. 109, 114, 832 N.W.2d 439, 442 (2013) quoting *Duck v. McQueen*, 263 Mich. 325, 328, 248 N.W. 637 (1933). Laches

is not triggered by the passage of time alone; rather, laches is an equitable tool used to provide a remedy to the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. *Id*. "Under Michigan law, '[a] party with unclean hands may not assert the equitable defense of laches.'" *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 344 (6th Cir. 2018).

Laches at least applies to Counts I and II of Plaintiff's Complaint. As mentioned above, Count I became ripe on August 29, 2024, when Defendant made her final decision to reject Plaintiff's notice of withdrawal. Count II could have become ripe as early as Plaintiff became the Presidential nominee for a minor party in the State of Michigan but certainly no later than Defendant's rejection of Plaintiff's notice of withdrawal. It was not necessary for Plaintiff to adjudicate his other claims through the state courts prior to bringing these federal constitutional claims. Nor were these claims triggered by Defendant re-certifying the candidates on September 9, 2024.

By failing to raise these claims sooner, Defendant asserts that she will be unable to meet statutory deadlines for providing ballots to the county clerks. She also contends that she will be unable to comply with the statutory deadline for delivering ballots to absentee and military voters. Defendant further argues that as

of September 17, 2024, ninety percent of the total ballots have been printed and it would cost at least $500,000.00 to reprint just those ballots for Wayne County alone.

In this instant case, Plaintiff's delay in bringing Counts I and II was unreasonable and could work to render inefficient the election process by causing missed deadlines and costing the State of Michigan hundreds of thousands of dollars in reprinting costs.

As to Count III, the line is not as clear.[2] While Plaintiff's claim could have been brought earlier, Defendant may not be able to overcome the unclean hands doctrine. The parties do not dispute that Defendant was required by statute to certify the names of the candidates by September 6, 2024. Mich. Comp. Laws 168.648. It is further undisputed that per the Michigan Court of Appeals order, Defendant certified the names of the candidates on September 6 and did not include Plaintiff's name. Yet, on September 9, Defendant re-certified the names, including Plaintiff's name as a candidate after the Michigan Supreme Court reversed the court of appeals. However, Defendant has not provided any statutory authority for doing so. Such action may bar the equitable doctrine of laches related to Plaintiff's First Amendment claim because without any statutory authority to change the names of candidates

---

[2] It appears that the time related to proper withdrawal is a point of confusion. The Court must consider whether such confusion deems the election process inefficient and poses greater harm to the public than good.

after the deadline, Defendant may have exceeded the bounds of her office. If so, laches may be inappropriate as to Count III.

### 3. *Rooker-Feldman* **Doctrine**

Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine stands for the proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001). Defendant mentions this argument in a footnote as Plaintiff attempts to separate the claims in the present matter from the case litigated through the state courts as best as he can. Yet, the present claims are not so attenuated that the *Rooker-Feldman* doctrine should be disregarded. Plaintiff is clearly unhappy with the result of the state litigation and only brought these federal claims when the result did not turn in his favor. Upon review, an appeals court could find that this Court lacks jurisdiction as Plaintiff's Complaint may be viewed as a collateral attack on the state court litigation.

### 4. **Plaintiff is unable to establish a likelihood of success on the merits.**

Even if none of the above doctrines apply in this matter, Plaintiff has not carried his burden of showing a likelihood of success on the merits.

### a. **Count I**

11

Count I alleges violation of Article II, Section 1 as applied in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). Relying on *Anderson*, Plaintiff argues that "states may not impose their stringent ballot access requirements on the national election for President." But *Anderson* does not strike down all time restraints imposed by states related to ballot access. In fact, *Anderson* acknowledges that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Anderson*, 460 U.S. at 788. Anderson concerned Ohio's early filing deadline which the court found "may have a substantial impact on independent-minded voters." *Id.* at 790. The court held that "it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Id.* at 792.

Interestingly, that is what Plaintiff seeks here. Plaintiff is asking the Court to interrupt the election process because he no longer wants to participate. According to *Anderson*, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* at 789.

On balance, Plaintiff's interest in unilaterally withdrawing and having his name removed from the ballot is outweighed by the State's interest in maintaining the integrity of the ballot. Plaintiff campaigned for and obtained the nomination of the Natural Law Party. Plaintiff accepted that nomination. Upon doing so, Plaintiff asserted that he would represent the interests of the Natural Law Party if elected as President of the United States. Plaintiff carried on with this through the August primary and for personal reasons, now changes the tune. If allowed to withdraw, the Natural Law Party will have no candidate on the ticket, no opportunity to replace Plaintiff, and risk losing access to the ballot in the next general election. Plaintiff has not established an interest so substantial as to overcome that of the State in keeping his name on the ballot. It is not likely that Plaintiff will prevail on the merits of this claim.

### b. Count II

Count II alleges violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff argues that "the Michigan courts, its Attorney General and its Secretary of State have now all affirmed that MCL 168.686a(4) prohibits a minor presidential candidate to withdraw once nominated." [ECF No. 1, PageID.13]. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put

forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434, 112 S. Ct. 2059, 2063, 119 L. Ed. 2d 245 (1992) *quoting Anderson*, 460 at 789 and *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14, 107 S.Ct. 544, 547-48, 93 L.Ed.2d 514 (1986).

Plaintiff contends that the statutory deadlines to withdraw advantage the Democrats and Republicans in multiple ways and disadvantage presidential candidates from minor parties. [ECF No. 2, PageID.74]. Plaintiff seeks to liken himself to President Biden who withdrew from the presidential race prior to being nominated. *Id*.  Plaintiff is not so situated. In fact, Plaintiff had been the nominee for the Natural Law Party for several months prior to filing his notice of withdrawal. Further, Plaintiff points to no examples where a nominee of any party has been able to withdraw from the ballot after accepting such nomination.

Plaintiff is correct that M.C.L. 168.686, which governs major party candidates does not mention any time limits related to withdrawal. Nevertheless, Plaintiff has not shown that prohibiting minor party candidates creates an undue burden that outweighs the State's interest in the orderly administration of elections and its regulatory process of determining which parties have enough continued support to support ballot access. Therefore, Plaintiff has failed to show that he is likely to succeed on his Fourteenth Amendment claim.

14

### c.  Count III

Count III alleges violation of the First Amendment. Plaintiff claims that his name appearing on the ballot constitutes compelled speech. [ECF No. 2, PageID.76]. Plaintiff argues that "when [Defendant] places his name on the ballot, voters believe that is because Mr. Kennedy wanted his name on the ballot, and that he is asking for their support and their vote." *Id*. Plaintiff further argues that his name on the ballot will force him to "convey a false message to every citizen of Michigan that he is vying for their vote[.]" *Id*. at PageID.77.

Plaintiff cites *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 63, 164 L Ed 2d 156 (2006) for the proposition that "[o]ur compelled-speech cases are not limited to the situation in which an individual must personally speak the government's message. We have also in a number of instances limited the government's ability to force one speaker to host or accommodate another speaker's message." However, *Rumsfeld* noted "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62, 126 S. Ct. 1297, 1308, 164 L. Ed. 2d 156 (2006) *quoting Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 (1949).

Here too, the regulation against withdrawal does not regulate speech but conduct, whether or not Plaintiff may withdraw from the presidential race.

For all these reasons, the Court finds that Plaintiff has not established a likelihood of success on the merits. While such a finding can be fatal in reviewing a motion for preliminary injunction, the Court will proceed in analyzing the remaining factors.

### B. Irreparable Harm

Plaintiff must show that harm is likely in the absence of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008). Plaintiff argues that "printing and mailing ballots with Mr. Kennedy's name appearing as a candidate for an office he no longer seeks cancels his statutory and constitutional rights." [ECF No. 13, PageID.294]. As mentioned above, Plaintiff's constitutional claims are barred by res judicata, laches, and likely the *Rooker-Feldman* doctrine, any harm to Plaintiff's statutory or constitutional rights is not substantiated.

Plaintiff further argues that he will suffer reputational harm "as his supporters will be left confused and potentially angry should they later learn that a vote cast for Mr. Kennedy in Michigan was an invalid, wasted vote." The Supreme Court has held that plaintiffs must show that harm is likely and not merely a possibility. *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008). Plaintiff cannot argue with certainty the feelings of others. Plaintiff is likely to suffer the same stated harm as a result of withdrawal. Plaintiff has not established a likelihood of irreparable harm.

### C. Balancing of Harms and Public Interest

Plaintiff's only stated harm is to his reputation. States have a strong interest in their ability to enforce state election law requirements. *See Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S. Ct. 1564, 1569, 75 L. Ed. 2d 547 (1983) ("as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."). Such regulation promotes efficiency and predictability to ensure an orderly voting process. As such, Defendant argues that the integrity of the electoral process is at stake. [ECF No. 8, PageID.131]. As mentioned above, Defendant is concerned with complying with statutory deadlines for delivering ballots to county clerks to subsequently be delivered to absent and military voters. Reprinting ballots at this late hour would undoubtedly halt the voting process in Michigan and cause a burden to election officials.

The Natural Law Party will also face harm. Plaintiff sought and won the nomination of the Natural Law Party for the office of the President of the United

States. To allow Plaintiff to unilaterally withdraw from the ballot would leave supporters of the Natural Law Party without a candidate on the ballot. Indeed, the Natural Law Party's Chairman, Doug Dern opposed Plaintiff's withdrawal in an email sent to the Michigan Bureau of Elections. See ECF No. 8-5, PageID.164. Allowing Plaintiff to leave his nominating party without a candidate will impede the party's ability to qualify for ballot access in future elections run afoul to the notion of good faith in securing the nomination of minor parties.

On balance, the harm incurred by Defendant, the Natural Law Party, and Michigan voters outweighs that felt by Plaintiff if he is prohibited from withdrawing.

## IV.   CONCLUSION/ORDER

In light of the foregoing,

IT IS SO ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

SO ORDERED.

s/Denise Page Hood_____
Denise Page Hood
United States District Judge

Dated: September 18, 2024