# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: September 27, 2024

Mr. Brandon L. Debus
Dickinson Wright
2600 W. Big Beaver Road
Suite 300
Troy, MI 48084

Ms. Heather S. Meingast
Office of the Attorney General
of Michigan
P.O. Box 30736
Lansing, MI 48909

Re: Case No. 24-1799, *Robert Kennedy, Jr. v. Jocelyn Benson*
Originating Case No. : 2:24-cv-12375

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Laurie A Weitendorf
Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0397n.06

No. 24-1799

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Sep 27, 2024

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| ROBERT F. KENNEDY, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JOCELYN BENSON, in her official capacity | ) | |
| as Michigan Secretary of State, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: CLAY, McKEAGUE, and BLOOMEKATZ, Circuit Judges

CLAY, J., delivered the opinion of the court in which BLOOMEKATZ, J., joined. McKEAGUE, J. (pp. 12–21), delivered a separate dissenting opinion.

**CLAY, Circuit Judge.** Plaintiff Robert F. Kennedy Jr. appeals the district court's denial of his motion for preliminary injunction. Plaintiff alleges that Defendant Jocelyn Benson, in her official capacity as Michigan Secretary of State, violated his constitutional rights under Article II, the First Amendment, and the Fourteenth Amendment of the United States Constitution. Plaintiff was formerly a candidate for President of the United States and attempted to withdraw his name from the Michigan ballot on August 23, 2024. After the Michigan Secretary of State refused to permit Plaintiff to withdraw his name from the ballot, he filed suit first in state court and then in the United States District Court. For the reasons that follow, we **AFFIRM** the district court's denial of Plaintiff's motion for preliminary injunction.

- 1 -

No. 24-1799, *Kennedy v. Benson*

## I. BACKGROUND

### A. Factual Background

Over the last year-and-a-half, Plaintiff has been a candidate for President of the United States. After initially running for the Democratic Party's nomination, Plaintiff ran as a third-party candidate for the Natural Law Party and undertook a prolonged effort to gain ballot access in each of the nation's states. *See* Rebecca Davis O'Brien, *Surprise Tactics and Legal Threats: Inside R.F.K. Jr.'s Ballot Access Fight*, N.Y. Times, Apr. 29, 2024. On April 17, 2024, Plaintiff received the Natural Law Party's presidential nomination in Michigan, thus earning a place on Michigan's general election ballot.

On August 23, 2024, Plaintiff withdrew from the presidential race and notified the Michigan Bureau of Elections of his decision. Three days later, Defendant Benson rejected Plaintiff's withdrawal notice, citing Mich. Comp. Laws § 168.686a(2). Plaintiff renewed his withdrawal notice the following day, but Defendant again rejected the notice, citing Mich. Comp. Laws § 168.686a(4).

After receiving his second rejection, Plaintiff filed suit on August 30, 2024, in the state Court of Claims. Plaintiff alleged that Defendant had violated various state election laws and the free speech protections of the Michigan Constitution by failing to remove Plaintiff from the ballot. He sought mandamus, injunctive, and declaratory relief. The state court dismissed the complaint. On September 4, 2024, Plaintiff appealed to the Michigan Court of Appeals. Two days later, the Court of Appeals granted Plaintiff's appeal and remanded to the Court of Claims, which granted mandamus and ordered Defendant to remove Plaintiff's name from the ballot. That same day, Defendant appealed to the Michigan Supreme Court, and on September 9, 2024, the court granted Defendant's appeal and affirmed the Court of Claims' order.

No. 24-1799, *Kennedy v. Benson*

On September 6, 2024—in between the time of the Court of Appeals' and the Michigan Supreme Court's decisions—Defendant sent the certification of candidates to Michigan's county clerks.  Per the Court of Appeals' decision and subsequent order, Defendant's communication did not have Plaintiff's name listed as the candidate for the Natural Law Party, nor did it order that the ballots be printed.  Three days later, after the Michigan Supreme Court's decision was released, Defendant updated the names of candidates and included Plaintiff's name as the presidential candidate for the Natural Law Party.

### B.  Procedural History

After Plaintiff lost his case in state court, he filed suit in the U.S. District Court for the Eastern District of Michigan.  Plaintiff's district court complaint alleged three counts of constitutional violations: (1) a violation of Article II, Section I, arguing "that states may not impose their stringent ballot access requirements on the national election for President" and that Defendant's placement of Plaintiff's name on the ballot serves "no other possible reason than to confuse unwitting Michigan voters to vote for a candidate no longer running for office," Compl., R. 1, Page ID #6–11; (2) a Fourteenth Amendment equal protection violation, arguing that the deadline by which a candidate withdraws gives an "advantage [to] the Democrats and Republicans" by unfairly preventing third-party candidates from withdrawing after receiving a party's nomination, *id.* at Page ID #11–15; and (3) a First Amendment compelled speech violation, arguing that by placing Plaintiff's name on the ballot, Defendant compels Plaintiff "to convey a false message to every citizen of Michigan that he is vying for their vote in this state," *id.* at Page ID #15–19.  Plaintiff subsequently filed a motion for a preliminary injunction, requesting that Defendant remove his name from the ballot.

No. 24-1799, *Kennedy v. Benson*

The district court denied Plaintiff's motion for a preliminary injunction. In coming to its conclusion, the district court found that Plaintiff could not establish a likelihood of success inasmuch as Plaintiff's claims were likely barred by res judicata, laches, and the *Rooker-Feldman* doctrine. The court also explained that Plaintiff could not establish a likelihood of success on the merits, as each of the claims failed to present viable constitutional causes of action. Finally, the court concluded that Plaintiff could show neither irreparable harm nor a sufficient balancing of harms and public interest. Defendant now appeals the district court's decision.

## II. DISCUSSION

### A. Standard of Review

In deciding a motion for preliminary injunction, courts consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "A preliminary injunction is an extraordinary and drastic remedy," and should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024) (first quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); then quoting *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7, 22 (2008)). This Circuit reviews preliminary injunction orders "for abuse of discretion, subjecting factual findings to clear-error review and examining legal conclusions de novo." *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020) (citation omitted).

No. 24-1799, *Kennedy v. Benson*

## B.  Analysis

Plaintiff's appeal fails because he cannot satisfy the first preliminary injunction element, likelihood of success on the merits, as each of his claims are barred by res judicata.  Nor are the equities in his favor.

### 1.  Likelihood of Success

Under the principle of res judicata, if a plaintiff's claims reach final judgment in one court, she cannot pursue the same causes of action in another.  In other words, "a litigant generally does not get two bites at the apple." *Talismanic Props., LLC v. City of Tipp City*, 742 F. App'x 129, 131 (6th Cir. 2018).  But that's what Plaintiff is attempting here.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738).  This Court looks to the state law where "Plaintiff's prior litigation took place"—in this case, Michigan, "which employs a 'broad view of res judicata.'" *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *In re MCI Telecomms. Compl.*, 596 N.W.2d 164, 183 (Mich. 1999)).  In Michigan, res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).  Michigan's res judicata law "bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405 (Mich. 2022) (internal quotation marks and citation omitted).

No. 24-1799, *Kennedy v. Benson*

Res judicata applies to each of Plaintiff's claims, so the Michigan Supreme Court's judgment precludes Plaintiff's federal complaint. Regarding the first element of Michigan's res judicata standard, the prior action was decided on the merits. The Court of Claims issued an opinion dismissing the state complaint on the merits, and the Michigan Supreme Court affirmed that dismissal. The second element is also met, as both Plaintiff and Defendant were parties to the state action. The primary issue, therefore, centers on the third res judicata element: whether the claims in the federal complaint were, or could have been, resolved in the state court case.

Plaintiff could have brought his First Amendment compelled speech claim in the state court suit. Indeed, his state court complaint listed a compelled speech claim under the Michigan Constitution, stating that Defendant's actions compel "Plaintiff to convey a false message to every citizen of Michigan that he is vying for their vote in this state, when he is not." State Compl., R. 8-9, Page ID #188. Plaintiff evidently believed Defendant's conduct implicated his speech interests prior to filing suit in state court. Perplexingly, Plaintiff argues that he "did not raise any compelled speech claim in his state court action," though the record shows the opposite. Appellant's Br., ECF No. 6, 10. Even assuming he means he did not raise a *federal* compelled speech claim there, he does not argue that he was barred from doing so. This cause of action is barred by res judicata.

Plaintiff did not raise an Article II[1] or equal protection claim in state court. Nevertheless, he could have. *See Adair*, 680 N.W.2d at 396. The claims in this case clearly arise from the same transaction as the claims in the state court case: in both cases, Plaintiff alleged that Michigan unfairly placed his name on the ballot and he sought to have his name removed. The Article II

---

[1] Article II, Section 1 of the U.S. Constitution outlines the manner in which presidential elections must be conducted.

No. 24-1799, *Kennedy v. Benson*

count argues that the presence of Plaintiff's name on the ballot functions to confuse Michigan voters and "waste their votes," while the withdrawal deadlines are unreasonable and undermine the electoral process. Compl., R. 1, Page ID #6–11. Those precise arguments could have easily been made in state court; in fact, Plaintiff employs similar language in parts of his state court complaint, such as when he argues that votes for him are "wasted and in vain." State Compl., R. 8-9, Page ID #188. With respect to the equal protection count, Plaintiff argues that the state withdrawal deadlines unfairly benefit the major political parties, as minor party candidates are only permitted to withdraw prior to accepting a party's nomination. Before filing in state court, Plaintiff knew Defendant rejected his request to withdraw from the ballot, implicating the same harms he raises here. And like his First Amendment claim, he does not argue that he was barred from bringing these constitutional claims in state court either.

Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that prior to September 9, 2024—the date on which Michigan recertified the names on its ballot and listed Plaintiff as a candidate—there was no Article II, equal protection, or First Amendment violation for him to complain of. Plaintiff explains that, prior to September 9, his name had not been placed on the ballot, so no constitutional violation had yet accrued. But by this logic, ballot-related constitutional claims are only ripe when ballots are finalized. That, however, is not an accurate rendering of the law. This Circuit has previously considered constitutional claims regarding a candidate's name on an election ballot where the claim was brought before ballots had been finalized. *See, e.g.*, *Rosen v. Brown*, 970 F.2d 169, 173–74 (6th Cir. 1992) (addressing a challenge to the Ohio Secretary of State's decision, prior to ballots being finalized or printed, not to place a political party indicator next to a candidate's name on the ballot). Indeed, here, the alleged constitutional violations were ripe well before September 9, 2024. Plaintiff's constitutional claims

No. 24-1799, *Kennedy v. Benson*

became ripe in August, when Defendant declined to accept Plaintiff's withdrawal notice. It was at that point that Plaintiff became "threatened with 'imminent' injury in fact"—he became aware of Defendant's decision that his name should remain on the Michigan ballot. *Carman v. Yellen*, 112 F.4th 386, 400 (6th Cir. 2024) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)). Plaintiff, who filed his state complaint after Defendant's denial of his request to be removed from the ballot, thus had ample opportunity to make his constitutional claims in state court.

Plaintiff next argues that res judicata does not apply to his constitutional claims because, until the resolution of his state court action, the proper interpretation and application of the relevant Michigan state election law, Mich. Comp. Law § 168.686a, was "in flux." Appellant's Br., ECF No. 6, 8. On Plaintiff's telling, his claims did not accrue until the Michigan Supreme Court weighed in on the application of Michigan state election law and, accordingly, settled the relevant "factual and legal circumstances." But the notion that res judicata does not apply where the relevant legal question was "in flux" during the pendency of the first litigation would upend the doctrine. Res judicata "ensures the finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). If a litigant could avoid res judicata and challenge a judicial decision in a subsequent litigation purely because the law was "in flux" during the first litigation, judicial decisions would seldom be final.

In support of his argument that res judicata does not apply, Plaintiff relies on this Court's decision in *Rawe v. Liberty Mutual Fire Insurance Co.*, 462 F.3d 521, 529 (6th Cir. 2006). Plaintiff's own case cuts against him. In *Rawe*, after being injured in a car accident, a plaintiff filed suit, seeking to recover under two insurance policies. *Id.* at 523. The plaintiff's first lawsuit resolved when she accepted a settlement offer. *Id.* at 525. But an insurance company then refused

No. 24-1799, *Kennedy v. Benson*

to pay, so the plaintiff filed suit again, arguing that the insurance company had engaged in bad faith during the first lawsuit. *Id.* On appeal, this Court held that although the plaintiff now sought to recover under new theories of relief, several of her claims in the second lawsuit were barred by res judicata. We explained, "the fact that" the plaintiff "now asserts alternative theories of recovery . . . does not allow [her] to avoid claim preclusion, when those other theories could have been asserted" in her first legal action. *Id.* at 529 (citation omitted). The plaintiff could only seek to recover based on facts that had "not yet occurred" when she filed her first lawsuit. *Id.* Plaintiff's claims are barred for the same reason; Plaintiff points only to new legal theories, not to a change of facts that occurred after he filed his first lawsuit.

At bottom, Plaintiff's current lawsuit is a re-run of his first. When Plaintiff filed his state court lawsuit in August, he sought to challenge the Defendant's decision—based on Defendant's interpretation of Mich. Comp. Laws § 168.686a—that he should remain listed as a candidate on Michigan's ballot. In this lawsuit, Plaintiff continues to seek to have his name removed from the ballot. The fact that Plaintiff has now identified new legal theories, or that the Michigan Supreme Court has now shed more light on the application of Mich. Comp. Laws § 168.686a, does not somehow allow Plaintiff a second bite at the apple.

Plaintiff's claims may also be precluded by the *Rooker-Feldman* doctrine, which bars lower federal courts from reviewing cases that have been litigated and decided in state court. *See RLR Invs., LLC v. City of Pigeon Forge,* 4 F.4th 380, 385 (6th Cir. 2021). Yet considering that we dismiss this case on res judicata grounds, we do not find it necessary to reach the issue of whether *Rooker-Feldman* applies. *See Arizona v. Biden*, 40 F.4th 375, 390 (6th Cir. 2022) (considering whether the plaintiffs were likely to succeed on the merits of their claim when their standing was in doubt).

No. 24-1799, *Kennedy v. Benson*

### 2. Other Factors

We also balance whether an injunction would protect Plaintiff from "irreparable injury," cause substantial harm to others, and serve the public interest. *Bays*, 668 F.3d at 818–19. Here, each factor cuts against Plaintiff.

First, consider Plaintiff's theory of injury. He argues that "once the ballots are printed" with his name on them, he will inevitably suffer an "injury to reputation," and his supporters will "be left confused and angry for casting an invalid vote" for him. But Plaintiff has not shown that removing his name from the ballot would prevent him from losing face in the eyes of his supporters. In another court, Plaintiff's campaign committee has asked to be *kept on* the ballot in New York, claiming irreparable injury if he's taken off. *See Kennedy v. Berger*, No. 24-2385, 2024 WL 4274191 (2d Cir. Sept. 18, 2024); Application for Emergency Injunction at 1–2, *Kennedy v. Berger*, No. 24A285 (U.S. Sept. 20, 2024). It is hard to imagine how excluding Plaintiff from the ballot could protect him from irreparable reputational damage in one state but cause the same damage in another. His arguments on irreparable harm are unpersuasive.

Next, consider the effects of an injunction on others. The Chair of the Natural Law Party, for which Plaintiff served as the Presidential nominee, asked the Michigan Board of Elections to prevent Plaintiff from withdrawing his name. In the Chair's words, "every election cycle is a challenge" for minor parties, and removing Plaintiff from the ballot would leave the Natural Law Party "in a bad position." R. 8-5, Page ID #13.

The public interest is perhaps the most paramount here. By the time the district court ruled, at least 45 of Michigan's counties, including its two largest ones, had begun to print ballots. Changing the ballot at this late a date would be even more disruptive. The ballots are now printed. The Michigan Constitution provides for absentee voting during the 40 days before an

No. 24-1799, *Kennedy v. Benson*

election—that started September 26, 2024.  *See* Mich. Const. of 1963 art. 2, § 4(1)(h).  Plaintiff does not explain how to unring the bell at this juncture without great harm to voting rights and the public's interest in fair and efficient election administration.  The district court did not abuse its discretion by finding that an injunction at this late stage would disrupt the orderly administration of the upcoming election.  *Benisek v. Lamone*, 585 U.S. 155, 160 (2018); *Estill v. Cool*, 295 F. App'x 25, 27 (6th Cir. 2008).

### III.   CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

No. 24-1799, *Kennedy v. Benson*

**McKEAGUE, Circuit Judge, dissenting.** This case involves yet another attempt by a state election official to influence the upcoming presidential election by manipulating state election procedures. On August 23, 2024, Robert F. Kennedy, Jr. tried to withdraw his name from Michigan's general election ballot. Michigan Secretary of State Jocelyn Benson denied Kennedy's request, citing a state law that, in her view, prevented minor party candidates from withdrawing from the election. The parties then took their dispute to state court. While the litigation was pending, Secretary Benson sent the "call of the election" to county clerks across the state, pursuant to a deadline set by state law. The call of the election did not include Kennedy's name. Then, after the state court litigation concluded—and three days after the statutory deadline—Secretary Benson sent an "updated" call of the election that added Kennedy's name to the ballot. This action was unilateral, unauthorized, and likely illegal.

Kennedy now seeks injunctive relief in federal court, claiming that Secretary Benson's addition of his name to the ballot constituted compelled speech. Because Secretary Benson's actions violated Kennedy's First Amendment rights and serve no purpose other than to sow needless confusion in a presidential election by including a candidate who has no intention to serve, I respectfully dissent.

## I.

The facts of this case are undisputed and summarized in the majority opinion. But the majority leaves out several facts that are critical to resolving this case.

The Natural Law Party nominated Kennedy as its candidate for President of the United States on April 17, 2024. On August 23, Kennedy suspended his presidential campaign. That same day, Kennedy delivered a withdrawal notice to the Michigan Bureau of Elections. The Bureau of Elections rejected Kennedy's notice and informed him that Mich. Comp. Laws § 168.686a(2) prohibited minor party candidates from withdrawing. After Kennedy renewed his request to

No. 24-1799, *Kennedy v. Benson*

withdraw, the Bureau of Elections rejected him again, this time citing Mich. Comp. Laws § 168.686a(4).

Kennedy then filed a lawsuit in state court, requesting mandamus, injunctive, and declaratory relief. The core of that case was a question of statutory interpretation: whether Mich. Comp. Laws § 168.686a prohibited Kennedy from withdrawing from the election. The Michigan Court of Claims held that Kennedy was not entitled to a writ of mandamus and dismissed Kennedy's complaint. At no point did the Court of Claims order Secretary Benson to keep Kennedy's name on the ballot.

On September 6, the Michigan Court of Appeals reversed the Court of Claims order and held that Kennedy was entitled to mandamus relief. Again, the decision was based on statutory interpretation. After surveying a web of cross-referencing state election laws, the court held that Kennedy had a "clear legal right" to remove his name from the ballot.

Under state law, Secretary Benson was required to distribute the "call of the election" to the clerk of each Michigan county "at least 60 days" before the election. Mich. Comp. Laws § 168.648; Brater Aff., R.8-5 at PageID 157. This year, the deadline was September 6—the same day the Court of Appeals issued its order. Within hours after the Court of Appeals released its decision, Secretary Benson issued the call of the election; Kennedy was not listed as a candidate.

Three days after the deadline for the call of the election, the Michigan Supreme Court reversed the Court of Appeals. Like the Court of Claims, the Supreme Court did not order Secretary Benson to put Kennedy's name on the ballot. It did not conclude that state law prohibited minor party candidates from withdrawing. Instead, it held that Kennedy had not satisfied the criteria for obtaining mandamus relief. In short, the order simply ended the state court case.

But Secretary Benson wasn't done. That same day, her office sent an "updated candidate listing" to the county clerks. Kennedy's name reappeared on the ballot. To date, Secretary Benson has not identified any statute, rule, or court order that required her—or even permitted her—to add a candidate to the ballot after the statutory deadline.

- 13 -

No. 24-1799, *Kennedy v. Benson*

One day after Secretary Benson added Kennedy's name to the ballot, Kennedy filed this lawsuit. Kennedy raised three constitutional claims and sought a temporary restraining order and preliminary injunction that would enjoin Secretary Benson from including his name on the ballot. In one of his claims, Kennedy alleged that Secretary Benson compelled his speech—and thus violated the First Amendment—by including his name on the ballot against his will. Critically, Kennedy's asserted injury arose not from Secretary Benson's refusal to accept his withdrawal in August, but from her decision to put his name back on the ballot on September 9—after the statutory deadline.

The district court denied Kennedy's motion for a preliminary injunction, and Kennedy timely appealed. *See* 28 U.S.C. § 1292(a)(1).

## II.

The district court denied Kennedy's motion for a preliminary injunction because it was procedurally barred and failed to establish a constitutional violation. The denial of a preliminary injunction is reviewed for an abuse of discretion. *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015). When a preliminary injunction implicates the First Amendment, the district court's legal rulings—including its First Amendment conclusion—are reviewed *de novo*. *Id.* (citing *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 454 (6th Cir. 2014)).

### A.    Procedural Bars

In denying Kennedy's motion for a preliminary injunction, the district court found that his claims are barred by (1) res judicata, (2) laches, and possibly (3) the *Rooker-Feldman* doctrine. The majority agrees that res judicata bars all three of Kennedy's claims. But in reaching these conclusions, the district court and the majority mischaracterize the source of Kennedy's injury.

### 1.    Res Judicata

Res judicata does not bar Kennedy's claim. Res judicata prevents a party from relitigating a cause of action that was already decided by a prior court. *Prewett v. Weems*, 749 F.3d 454,

No. 24-1799, *Kennedy v. Benson*

462 (6th Cir. 2014). It bars claims that were actually raised or could have been raised in the prior proceeding. *Id.* (citing *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)). Federal courts must give a state-court judgment the same preclusive effect as would the state where the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738. In Michigan, "[r]es judicata bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405 (Mich. 2022) (citations omitted).

Here, the district court found that the Michigan Court of Claims already decided Kennedy's First Amendment claim. The timeline of events, however, belies this conclusion. In this case, the asserted injury that gave rise to Kennedy's First Amendment claim was *not* the Bureau of Elections' rejection of Kennedy's notice of withdrawal in August. Instead, the asserted injury was caused by Secretary Benson's decision to put Kennedy back on the ballot on September 9, three days after she distributed the call of the election without his name. The decision to alter the ballot occurred after the Michigan Supreme Court dismissed Kennedy's complaint with prejudice. Thus, Kennedy could not have raised his First Amendment claim during the state court litigation. *See Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (stating that res judicata bars claims "arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not").

The majority notes that Kennedy filed a similar "compelled speech claim" in state court. That may be so, but that alone does not trigger res judicata. Kennedy is not relitigating Secretary Benson's decision to reject his withdrawal notice in August. Rather, he is alleging that Secretary Benson violated his First Amendment rights by *adding* his name to the ballot without justification on September 9. Because res judicata only bars a subsequent action between the same parties when

No. 24-1799, *Kennedy v. Benson*

the "essential facts are identical," it does not apply to Kennedy's new claim. *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999).

### 2. Laches

Kennedy's claim is also not barred by laches. Laches is the "negligent and unintentional failure to protect one's rights." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 439 (6th Cir. 2006) (citation omitted). It is an affirmative defense that consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party. *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1053 (6th Cir. 2015) (citation omitted).

Kennedy did not unreasonably delay in bringing his federal lawsuit. The asserted injury—Secretary Benson's decision to put Kennedy on the ballot after sending out the call of the election—occurred on September 9. *See* Brater Aff., R.8-5 at PageID 157. Kennedy filed his federal complaint on September 10. Because this one-day delay was not unreasonable, and Secretary Benson did not provide any evidence of prejudice, laches does not apply either.

### 3. The *Rooker-Feldman* Doctrine

The majority and the district court incorrectly conclude that Kennedy's claim "may also be precluded" by the *Rooker-Feldman* doctrine. The doctrine prevents federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 674 (6th Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To determine if the doctrine applies, courts look to the source of the asserted injury in the federal complaint. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). If the injury is caused by the defendant's actions, and not by the state court decision itself, then *Rooker-Feldman* does not apply. *Brent*, 901 F.3d at 674.

No. 24-1799, *Kennedy v. Benson*

Secretary Benson—not any state court judgment—is the source of Kennedy's asserted injury. To be sure, if a state court had ordered Secretary Benson to keep Kennedy's name on the ballot, then this would be a different case entirely. But that's not what happened. The Court of Claims order did not *require* Secretary Benson to reject Kennedy's notice of withdrawal. *See* Mich. Ct. Cl. Order, R.1-4 at PageID 34. Similarly, the Michigan Supreme Court order did not demand that Secretary Benson take any action at all. Instead, the court merely held that Kennedy had not satisfied the requirements for mandamus relief. *See* Mich. Sup. Ct. Order, R.1-6 at PageID 38.

After the state case concluded on September 9, Secretary Benson "sent an updated candidate listing" to the county clerks. Brater Aff., R.8-5 at PageID 157. Secretary Benson claims that altering the ballot after the statutory deadline was "merely compliance with the Supreme Court's decision." Not so. This action was not compelled by any state court judgment, and it was not permitted by state law. *See* Mich. Comp. Laws § 168.648 (1954). Thus, *Rooker-Feldman* is inapplicable, and there are no procedural bars to deciding Kennedy's claim on the merits.

## B.    Substantive Claims

Kennedy is entitled to a preliminary injunction. When deciding whether to grant a preliminary injunction, a court must consider four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury without an injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting an injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014). In cases alleging a First Amendment violation, "the likelihood of success on the merits often will be the determinative factor." *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir.2009)). This is because "[t]he loss of First Amendment freedoms…unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

No. 24-1799, *Kennedy v. Benson*

### 1.     Likelihood of Success on the Merits

In his complaint, Kennedy alleges that Secretary Benson's unilateral decision to put his name back on the ballot amounts to compelled speech, in violation of the First Amendment. Kennedy likely would succeed on this claim.

First Amendment protections encompass conduct that communicates a message. *Texas v. Johnson*, 491 U.S. 397, 403 (1989). Conduct falls within scope of the First Amendment if (1) the speaker has the intent to convey a particular message, and (2) the viewer would likely understand the message. *Id.* at 404. The First Amendment also guarantees the right to refrain from speaking. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The state infringes on this right when it compels an individual to engage in communicative conduct that she finds unacceptable. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

In the context of elections, restrictions on access to the ballot can implicate the First Amendment's protection of political expression. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 186 (1979) ("[A]n election campaign is a means of disseminating ideas as well as attaining political office… Overbroad restrictions on ballot access jeopardize this form of political expression."); *Schmitt v. LaRose*, 933 F.3d 628, 638 (6th Cir. 2019) ("[T]he Supreme Court has acknowledged that a person or party may express beliefs or ideas through a ballot.").

Undoubtedly, the state can place restrictions on ballot access, and courts have routinely upheld state laws that regulate how a candidate can get on the ballot. But that's not what happened here. Kennedy's asserted injury did not arise from Secretary Benson's invocation of Mich. Comp. Laws § 168.686a in August. It did not arise from *any* state law. Instead, his claim is based on Secretary Benson's decision to put him back on the ballot—after his name was removed, after the ballots were certified, and after the statutory deadline. To be sure, there is no precedent squarely holding that adding a person's name to the presidential ballot against their will violates the First Amendment. But then again, Secretary Benson's actions are unprecedented.

- 18 -

No. 24-1799, *Kennedy v. Benson*

As it stands, the presidential ballot in Michigan conveys to the public that Kennedy is still seeking votes for the presidency. This is a message that Kennedy expressly disavowed on August 23, and yet it is now perpetuated by Secretary Benson's actions. Thus, her decision is subject to strict scrutiny, a test which she surely fails. *See Turner Broad. Sys., Inc. v. FCC.*, 512 U.S. 622, 642 (1994) ("Laws that compel speakers to utter or distribute speech bearing a particular message are subject to…rigorous scrutiny.").

### 2. Remaining Preliminary Injunction Factors

While the likelihood of success is typically dispositive, the remaining preliminary injunction factors also support Kennedy's motion.

First, the balance of equities weighs against Secretary Benson. Under state law, Secretary Benson was required to deliver a list of candidates that will appear on the ballot for the general election on September 6. *See* Mich. Comp. Laws § 168.648 (1954). And yet, without any explanation, her office sent the counties an "updated candidate listing" that included Kennedy's name on September 9. This decision was apropos of nothing.

Secretary Benson cannot use Mich. Comp. Laws § 168.686a as justification; the question here is not whether minor party candidates can withdraw from the election, but whether the Secretary of State has unchecked discretion to add candidates to the presidential ballot *after* the certification deadline. Even the district court acknowledged that this action "may have exceeded the bounds of her office." Order, R.14 at PageID 309.

Moreover, she cannot use the Michigan Supreme Court order as a shield. As described above, this was not an attempt to "compl[y] with the Supreme Court decision." Nor was her decision blessed by "judicial authority." The Michigan Supreme Court order simply found that Kennedy was not entitled to mandamus relief. It did not order her to alter the list of candidates that was already distributed to the county clerks. It did not set aside the statutory deadline. It did not justify a post hoc alteration of the ballot.

- 19 -

No. 24-1799, *Kennedy v. Benson*

In short, Secretary Benson cannot point to any law that gave her the authority to withdraw, edit, and redistribute the list of presidential candidates after the statutory deadline.

Second, the public interest weighs in Kennedy's favor. "[P]rotecting public confidence in elections is deeply important—indeed, critical—to democracy." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (plurality)). Contrary to this fundamental truth, Secretary Benson used her office to intentionally alter the ballot of a presidential election. And for what purpose? What reason did Secretary Benson have for adding a withdrawn candidate to the ballot after the call of the election was distributed to the county clerks? Surely it was not to streamline logistics or minimize voter confusion. This court—and the public—is left searching for an answer.

On appeal, Secretary Benson notes that "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." Appellee Br. at 42 (quoting *Storer v. Brown*, 415 U.S. 724, 733 (1974)). I agree. Yet her office intentionally altered the ballot by inserting a "frivolous" presidential candidate. As Kennedy correctly points out, Secretary Benson's decision will allow voters to select a candidate who does not want the job. In the voting booth, the new ballots will convey to voters that Kennedy is vying for the presidency. It suggests that a vote for Kennedy will not be a vote wasted. An inaccurate ballot will inevitably cause confusion, and it will undermine faith in this core democratic institution.

### III.

If this court ordered the district court to grant Kennedy's motion preliminary injunction, a difficult question would arise: what is the proper remedy for this constitutional infirmity? It's undeniable that "[a] state's interest in proceeding with an election increases as time passes, decisions are made, and money is spent." *Nader v. Blackwell*, 230 F.3d 833, 835 (6th Cir. 2000). And Secretary Benson correctly notes that, as of September 26, registered Michigan voters are entitled to vote an absent ballot. *See* Mich. Const. 1963, Art. 2, § 4(1)(h).

- 20 -

No. 24-1799, *Kennedy v. Benson*

　　But Secretary Benson can hardly complain about the "chaos" that would ensue from reprinting the ballots when her actions caused them to be misprinted. Kennedy filed his withdrawal notice on August 23, two weeks before the deadline for the call of the election. Instead of simply removing his name from the ballot, Secretary Benson repeatedly rejected Kennedy's requests. On the day of the statutory deadline, the state pressed on with its appeal to the Michigan Supreme Court. And then three days after the deadline, Secretary Benson inserted his name back onto the ballot. Apparently, some deadlines matter, and some do not.

***

　　Secretary Benson's decision to add Kennedy to the ballot was arbitrary. It was unchecked. It conveys a message that Kennedy does not wish to send. And it will cause voters to waste their fundamental right to vote. The ballots—with Kennedy's name on them—are already printed, and the election is underway. I can only hope that the weight of one state election official's thumb does not tip the scale of a national election.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1799

ROBERT F. KENNEDY, JR.,

     Plaintiff - Appellant,

     v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State,

     Defendant - Appellee.

> **FILED**
> Sep 27, 2024
> KELLY L. STEPHENS, Clerk

Before:  CLAY, McKEAGUE, and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Kelly L. Stephens, Clerk